Revised May 1, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————

No. 99-60840

———————————————————

LAKE HILL MOTORS, INC.,

Plaintiff-Appellant,

v.

JIM BENNETT YACHT SALES, INC.; JIM BENNETT;
SCOTT WALL; ROBERT EWING; GENE HILL; JOHN DOES 1-10;
YAMAHA MOTOR CORPORATION, USA; YAMAHA MOTOR CO., LTD.,

Defendants-Appellees.

———————————————————————————————

Appeal from the United States District Court
For the Northern District of Mississippi

———————————————————————————————

April 13, 2001

Before REYNALDO G. GARZA, DAVIS, and JONES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Lake Hill Motors, Inc. sued Jim Bennett Yacht Sales, Inc., its

owner Jim Bennett (whom we refer to together as Jim Bennett),

Yamaha Motor Co., Ltd., its subsidiary Yamaha Motor Corporation,

USA, certain employees of Yamaha Motor Co., Ltd. (whom we refer to

together as Yamaha), and other unnamed dealers of Yamaha products

for violations of the federal antitrust laws as well as violations

of Mississippi law.  The district court granted summary judgment to

all the defendants on the antitrust claims and one state law claim and dismissed the remaining state law claims without prejudice. Finding no genuine issues of material fact concerning Lake Hill's antitrust claims, we affirm the judgment of the district court.

I.

Yamaha manufactures a variety of boats and motors, including a line of one- to three-person motorized pleasure craft designed for use on open water. Yamaha competes with several other manufacturers in the market for these personal watercraft. Yamaha sells its products to consumers through a network of independent dealers.

Both Lake Hill and Jim Bennett are dealers of Yamaha personal watercraft. Lake Hill is located in Corinth, Mississippi and Jim Bennett in Iuka, Mississippi, about fifteen miles away. Because of their proximity, Lake Hill and Jim Bennett compete with each other in the sale of Yamaha personal watercraft. Lake Hill's Yamaha dealership is nonexclusive and does not require Lake Hill to sell Yamaha products to consumers at or above any particular price.

In December of 1997 Lake Hill filed this lawsuit. It first alleged that Jim Bennett, Yamaha, and certain other unnamed dealers of Yamaha personal watercraft conspired to fix the minimum resale price of Yamaha personal watercraft, and to terminate Lake Hill as a Yamaha dealer for charging less than that fixed price, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Lake Hill next alleged that Yamaha's cooperative advertising program, which

reimbursed dealers for advertising only when that advertising stated either Yamaha's suggested retail price or no price, violated § 1 of the Sherman Act.[1]  Lake Hill next alleged that Yamaha monopolized the market for personal watercraft in Mississippi, Tennessee, and Alabama in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.  Finally, Lake Hill alleged that the defendants committed various violations of Mississippi law.  Lake Hill sought an injunction under § 16 of the Clayton Act, 15 U.S.C. § 26, to prevent Yamaha from terminating its dealership, as well as money damages under § 4 of the Clayton Act, 15 U.S.C. § 15.

Both Yamaha and Jim Bennett moved for summary judgment on the three antitrust claims after the conclusion of discovery.  The district court subsequently granted summary judgment to both Yamaha and Jim Bennett on all the antitrust claims.  The district court held that Lake Hill had alleged a horizontal conspiracy to fix prices amongst Jim Bennett and other unnamed Yamaha personal watercraft dealers.  However, as Lake Hill had not identified any

---

[1]The third count of Lake Hill's complaint in fact alleges that the conspiracy to fix minimum resale prices between Yamaha, Jim Bennett and the other unnamed Yamaha dealers violated § 1 of the Sherman Act under a rule of reason analysis.  Based on the arguments submitted by Lake Hill in response to Yamaha and Jim Bennett's motions for summary judgment, the duplication in Lake Hill's complaint, and the fact that resale price maintenance agreements are per se unlawful, see Business Elec. Corp. v. Sharp Elec. Corp., 485 U.S. 717, 724, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988), the district court construed the third count of Lake Hill's complaint as concerning Yamaha's cooperative advertising program. We do the same given Lake Hill's arguments about the program in this appeal.

dealer other than Jim Bennett as a member of this conspiracy, it failed to show that there was any conspiracy to fix prices amongst Yamaha personal watercraft dealers. The district court held in the alternative that Lake Hill had failed to make any showing that it had been injured as a result of this purported conspiracy.

The district court held, regarding Yamaha's cooperative advertising program, that Lake Hill failed to make any showing that the program harmed competition in the market for personal watercraft in any way. As to Lake Hill's § 2 claim, the district court again held that Lake Hill had failed to produce any proof of a conspiracy that had harmed Lake Hill. Having granted Yamaha and Jim Bennett summary judgment on the three antitrust claims, the district court also granted Yamaha and Jim Bennett summary judgment on Lake Hill's Mississippi law claim for restraint of trade. The district court then dismissed the remainder of Lake Hill's Mississippi law claims without prejudice.

Lake Hill then moved for reconsideration on the grounds of newly discovered evidence and filed an affidavit in support of the motion. The district court denied the motion on the ground that the evidence had been available to Lake Hill before it ruled on Yamaha and Jim Bennett's motions for summary judgment so that the evidence was not submitted timely. Lake Hill then took this appeal.

II.

We review the district court's grant of summary judgment de novo. <u>Metro Ford Truck Sales, Inc. v. Ford Motor Co.</u>, 145 F.3d 320, 324 (5th Cir. 1998). Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Id</u>. at 324-25.

Before reaching the merits of Lake Hill's arguments, we first note that Lake Hill has not argued on appeal that the district court erred in granting summary judgment against it on its § 2 claim or in dismissing its other Mississippi law claims. As such, we must consider those claims abandoned. <u>Yohey v. Collins</u>, 985 F.2d 222, 225 (5th Cir. 1993).

We begin with Lake Hill's argument that Yamaha, Jim Bennett, and other unnamed Yamaha dealers conspired to fix the minimum resale price of Yamaha personal watercraft. Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor...." 15 U.S.C. § 15. A private plaintiff must show some injury to his business or property which results from some violation of the antitrust laws to recover damages under § 4 of the Clayton Act. <u>United Indus., Inc. v. Eimco Process Equip. Co.</u>, 61 F.3d 445, 448 (5th Cir. 1995); <u>McCormack v. NCAA</u>, 845 F.2d 1338, 1341 (5th Cir. 1988). Thus, even if the

-5-

plaintiff can show some violation of the antitrust laws, they may not recover under § 4 of the Clayton Act unless they can also show that they have suffered some injury as a result of the violation. Slowiak v. Land O' Lakes, Inc., 987 F.2d 1293, 1296 (7th Cir. 1993); Isaksen v. Vermont Castings, Inc., 825 F.2d 1158, 1165 (7th Cir. 1987). Likewise, a plaintiff seeking injunctive relief under § 16 of the Clayton Act can only obtain that relief when they show a significant threat of some injury to their business or property from a violation of the antitrust laws. McCormack, 845 F.2d at 1341; Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 113, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) (holding that §§ 4 and 16 of the Clayton Act provide a complementary set of remedies).[2]

Lake Hill asserts that Yamaha, Jim Bennett and certain other unnamed Yamaha dealers conspired to fix a minimum resale price for Yamaha personal watercraft. If Lake Hill were able to prove such a conspiracy between Yamaha and Jim Bennett, that conspiracy would

---

[2]A showing of injury-in-fact by a plaintiff in an antitrust action is in fact only a first step. The plaintiff's injury must also flow from the anticompetitive effect of the violation of the antitrust laws which causes the plaintiff's injury. That is, the injury the plaintiff suffers must be antitrust injury. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Because we find that Lake Hill has failed to show that it suffered any injury at all, we need not consider whether any injury it could suffer as a result of the violation it has alleged would qualify as antitrust injury. See Pace Elec., Inc. v. Canon Computer Systems, Inc., 213 F.3d 118, 122-23 (3rd Cir. 2000).

be a violation of § 1 of the Sherman Act.[3]  See <u>Monsanto Co. v. Spray-Rite Serv. Corp.</u>, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) (setting forth what evidence is required to allow a finding of a conspiracy to fix minimum resale prices between a manufacturer and a dealer).  Furthermore, the violation would be per se, meaning that Lake Hill would not need to show any harm to competition as a result of the conspiracy.  <u>Bus. Elec. Corp. v. Sharp Elec. Corp.</u>, 485 U.S. 717, 724, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).  However, we need not consider whether Lake Hill produced any evidence that would allow a reasonable trier of fact to conclude that there was a conspiracy between Yamaha and Jim Bennett, because Lake Hill has produced no evidence that would allow a reasonable trier of fact to conclude that it was injured as a result of this alleged conspiracy.

Almost all of the evidence Lake Hill submitted in response to the summary judgment motions concerns the extent to which Jim Bennett disliked and complained about other Yamaha dealers who sold personal watercraft below Yamaha's suggested retail price.  Though this may be relevant to showing an agreement between Yamaha and Jim

---

[3]The district court read Lake Hill's complaint as stating a cause of action arising out of a horizontal conspiracy between Jim Bennett and other Yamaha dealers.  It was correct to note that Lake Hill had not identified any of the other dealers who had conspired with Jim Bennett in this alleged conspiracy.  However, Lake Hill's complaint is better read as alleging a vertical conspiracy, that is one between the manufacturer Yamaha, the dealer Jim Bennett, and other unnamed dealers.  To allege a vertical conspiracy to fix minimum resale prices, Lake Hill need not identify anyone other than Yamaha and Jim Bennett.

Bennett, it shows nothing in the way of injury to Lake Hill. The only evidence Lake Hill pointed to concerning possible injury to itself as a result of the alleged conspiracy is found in the deposition testimony of Jerry Dan McLemore, one of the principals of Lake Hill. McLemore testified that he met with Scott Wall, a Yamaha executive and one of the defendants in this lawsuit, at a Yamaha dealers' meeting in Dallas sometime during 1995. McLemore said that Wall "raked [him] over the coals" for cutting prices below Yamaha's suggested retail price and threatened McLemore that Lake Hill's dealership would be terminated if Lake Hill's prices did not increase.

Though Wall may very well have threatened McLemore at the meeting in Dallas in 1995, that fact is insufficient to show that Lake Hill has been injured by any conspiracy between Yamaha and Jim Bennett. Lake Hill was never terminated as a dealer after the Dallas meeting and remains a Yamaha dealer to this day. Moreover, Lake Hill has presented no evidence that it was otherwise sanctioned by Yamaha in any way after the meeting in Dallas.

Neither has Lake Hill presented any evidence that it raised its prices after the Dallas meeting to meet Yamaha's alleged threats. McLemore himself testified that every Yamaha personal watercraft that Lake Hill sold from 1996 to 1998 was sold below Yamaha's suggested retail price. McLemore also admitted that any sales that Lake Hill lost in the mid-1990s were due solely to vigorous competition with Jim Bennett. Lake Hill has made no

showing that it was injured in its business or property, and so has no cause of action under § 4 of the Clayton Act.

Neither is Lake Hill entitled to injunctive relief under § 16 of the Clayton Act. Section 16 requires some threat of antitrust injury to justify injunctive relief. A threat made sometime in 1995 and never acted upon before the filing of this lawsuit in December of 1997 can not be said to be a genuine threat sufficient to justify injunctive relief under § 16. In sum, whatever conspiracy existed between Yamaha and Jim Bennett proved irrelevant to Lake Hill, as Yamaha never did anything to Lake Hill in furtherance of the conspiracy.

Yamaha and Jim Bennett were also entitled to summary judgment on Lake Hill's § 1 claim concerning Yamaha's cooperative advertising program. We have previously held that cooperative advertising programs such as Yamaha's are to be analyzed under the rule of reason. In re Nissan Antitrust Litigation, 577 F.2d 910, 917 (5th Cir. 1978). Thus, Lake Hill must show not only that there was some conspiracy, but also that the conspiracy harmed competition, to show a violation of § 1 of the Sherman Act. Business Elec., 485 U.S. at 723-25. Lake Hill has made no showing, and indeed has not even attempted to make a showing, that Yamaha's cooperative advertising program harmed competition in the market for personal watercraft. Jerry Dan McLemore in fact admitted in his deposition that competition for the sale of personal watercraft was fierce.

III.

Lake Hill, in its motion for reconsideration under Fed. R. Civ. P. 59(e), presented an affidavit from Pug Vickers, a Lake Hill employee. The affidavit states that Yamaha allocated Lake Hill only 2 model year 2000 personal watercraft even though Lake Hill ordered 23. Lake Hill now argues that this affidavit shows that it has suffered, or at least is threatened with, some injury from the alleged resale price maintenance conspiracy between Yamaha and Jim Bennett. We will not consider this affidavit, however, as it is not a part of the record before us.

As we have said, the district court denied Lake Hill's motion for reconsideration of its summary judgment. The district court held that the facts asserted in the Vickers affidavit were known to Lake Hill before the summary judgment ruling and thus the affidavit was not timely filed as part of a motion for reconsideration based on new evidence. We review the district court's ruling on the motion for reconsideration only for an abuse of discretion. Farm Credit Bank of Texas v. Guidry, 110 F.3d 1147, 1154 (5th Cir. 1997). Lake Hill makes no arguments in its appeal as to why the district court abused its discretion in denying Lake Hill's motion for reconsideration.

Moreover, the record indicates that Yamaha informed Lake Hill of the model year 2000 product allocation no later than August 9, 1999, and the district court did not issue its summary judgment until August 23, 1999. A district court is well within its

discretion to refuse to consider evidence submitted as part of a motion under Rule 59(e) which was known to the moving party before the summary judgment was issued. Lavespere v. Niagra Mach. & Tool Works, Inc., 910 F.2d 167, 175 (5th Cir. 1990). The district court did not abuse its discretion in refusing to consider the Vickers affidavit and in denying Lake Hill's motion for reconsideration.

## IV.

Lake Hill has not shown any injury or threat of injury pursuant to its resale price maintenance cause of action. Nor has it shown any harm to competition pursuant to its cause of action concerning Yamaha's cooperative advertising program. Therefore, the judgment of the district court is AFFIRMED.

AFFIRMED.