United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30060

_____

ICEE DISTRIBUTORS INC.,

                                    Plaintiff - Appellant-Cross-Appellee
                                                         - Cross-Appellant,

                    versus

J & J SNACK FOODS CORP.; WAL-MART STORES INC.,

                                    Defendants - Appellees-Cross-Appellants
                                                         - Cross-Appellees,

ICEE OF AMERICA INC.,

                                    Defendant - Cross-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Western District of Louisiana

_____

Before JOLLY, WIENER, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case, which involves an allegation of infringement of the ICEE trademark, was previously before us on an interlocutory appeal, ICEE Distributors, Inc. v. J&J Snack Foods Corp., 325 F.3d 586 (5th Cir. 2003). We upheld an injunction, solely on breach-of-contract grounds, against J&J Snack Food Corp. ("J&J") and Wal-Mart Stores, Inc. prohibiting them from selling ICEE-marked squeeze tubes within the territory covered by the exclusive license

agreement between ICEE Distributors, Inc. ("Distributors") and the ICEE trademark-owner, ICEE of America ("IOA"). On remand, the District Court denied Distributors' motion for reconsideration of its earlier summary judgment dismissing Distributors' trademark-infringement claim and partially granted defendants' motion to modify the judgment by narrowing the injunction so as to apply only to J&J.

In this appeal, Distributors challenges both the District Court's grant of summary judgment on the trademark-infringement claim and the District Court's modification of the injunction. We AFFIRM, in part, and REVERSE, in part, the grant of summary judgment and VACATE the modification of the injunction.

I

Our previous opinion lays out the background of this dispute:

> In the 1960s, the John E. Mitchell Company ("Mitchell Company") developed the ICEE, a semi-frozen beverage consisting of carbonated water and syrup mixed together that stands up when poured into a cup. Through its subsidiary, ICEEQUIP, the Mitchell Company owned the trademark rights to the ICEE name on products such as the cups for holding the frozen carbonated beverage, the machines for making the beverage, and the beverage itself. ICEEQUIP entered into several trademark licensing agreements with ICEE distributors in different parts of the country. [Distributors], by virtue of its purchase of several regional distributorships that had each entered into these licensing agreements, is a party to these identically-worded

2

agreements for its various distribution territories, which include most of Louisiana and Arkansas, and parts of Texas, Missouri, Alabama, and Georgia.

In the 1980s, the Mitchell Company went out of business. In response, the regional licensees, including Distributors and The ICEE Company, a subsidiary of J&J, formed ICEE of America ("IOA"). Upon execution of an assignment agreement, IOA acquired the ownership rights and interests in the trademarks previously held by ICEEQUIP. Both Distributors and The ICEE Company own stock in IOA, with The ICEE Company being the largest shareholder and Distributors the second largest.

In 1999, J&J began manufacturing frozen squeeze-up tubes under the name "ICEE" on a nationwide basis. Wal-Mart sold these tubes in its Sam's Club stores. Although J&J requested permission from Distributors to sell the tubes in its territory, Distributors refused. J&J sold the tubes in Distributors' territory nonetheless. Distributors filed this suit in May 1999 against J&J and Wal-Mart for trademark infringement and dilution.

After the case was filed, J&J attempted unsuccessfully to register with the U.S. Patent and Trademark Office a trademark for the use of the ICEE name on the tubes. The PTO rejected the application on the basis that the proposed trademark would likely be confused with IOA's trademarks on the ICEE beverage, cups, and beverage machine. J&J then assigned the trademark application to IOA, which successfully registered the trademark. IOA's president, Dan Fachner, who was also the president of J&J's subsidiary The ICEE Company, then granted J&J a license [dated February 25, 2000] to use the trademark in areas including Distributors' territory.

3

After execution of the licensing agreement between IOA and J&J, Distributors added IOA as a defendant, alleging that IOA, as the assignee of the trademarks previously held by ICEEQUIP, was bound to the licensing agreements with Distributors, and had breached those contracts by entering into the squeeze tube agreement with J&J. The district court granted summary judgment in the defendants' favor on the trademark infringement claim, but held a trial on the trademark dilution and breach of contract claims, bifurcating the liability and damages stages. After the liability stage of the trial, the jury found J&J and Wal-Mart liable for willful trademark dilution and IOA liable for breach of contract. Based on the jury verdict, the trial court subsequently entered a permanent injunction against J&J and Wal-Mart forbidding the sale of squeeze tubes within Distributors' territory.

325 F.3d at 589-90.

J&J, Wal-Mart, and IOA immediately filed an interlocutory appeal seeking to set aside the injunction, which appeal led to the 2003 opinion quoted above. We affirmed the injunction, but solely on the basis of the breach-of-contract claim. We held that Distributors' trademark-dilution claim failed because Distributors was not the owner of the ICEE trademark and thus did not have standing to sue under the Federal Trademark Dilution Act. Id. at 597-99. Because our review was limited to the propriety of the injunction, we remanded to allow further proceedings consistent with our interlocutory opinion. Thus, once the case had been remanded, the District Court had before it: first, the damages

4

issue on the breach-of-contract claim against IOA, and, second, the grant of summary judgment it had earlier entered against Distributors on the trademark-infringement claim.

On remand, Distributors moved the District Court for reconsideration of summary judgment based on facts that came to light post-summary judgment during trial of the trademark-dilution and breach-of-contract claims. The District Court denied the motion to reconsider, and Distributors waived its right to a trial to quantify its damages against IOA on the breach-of-contract claim. The District Court entered final judgment keeping the original permanent injunction in force and denying all other relief. Defendants then moved to vacate and modify the judgment and moved for a new trial on the breach-of-contract claim. The District Court denied the motion for new trial, but narrowed the permanent injunction so as to prohibit J&J, but not Wal-Mart, from selling the tubes in Distributors' territory.

Distributors appeals the summary judgment denying the trademark-infringement claim, the denial of the motion made on remand to reconsider the summary judgment, and the modification of the permanent injunction. Defendants cross-appeal the denial of their motion for retrial.

5

II

A

We first address the District Court's grant of summary judgment dismissing Distributors' trademark-infringement claim. A grant of summary judgment is reviewed <u>de</u> <u>novo</u>, using the same standard applied by the District Court. <u>Hall v. Gillman, Inc.,</u> 81 F.3d 35, 36 (5th Cir. 1996). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Distributors sued for trademark infringement under 15 U.S.C. § 1114:

> (1) Any person who shall, without the consent of the registrant –
>
>> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
>
> . . .
>
>> shall be liable in a civil action by the registrant for the remedies hereinafter provided . . . .

6

We considered this provision in Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette, 988 F.2d 587 (5th Cir. 1993), which the District Court cited as controlling its analysis. In Matrix Essentials, a manufacturer ("Matrix") of specialty hair-care products sold only at salons licensed to carry the products sued a retail drug store ("Emporium") stocking Matrix products on its shelves, claiming that Emporium's unauthorized sale of Matrix products constituted trademark infringement. Matrix relied on two theories. First, it claimed that Emporium was not selling "genuine" Matrix products because Emporium sold the products without the professional consultation supposed to be available to a customer purchasing Matrix products from a licensed salon. Second, Matrix contended that Emporium deceived the public into believing that Matrix had authorized Emporium to sell its products. We rejected both theories on the ground that "consumer confusion" is the "linchpin" of trademark infringement analysis, and concluded that "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark-owner's consent." Id. at 590. Consumer confusion could not be established in Matrix Essentials because the products bearing the mark were clearly authorized by the holder of the trademark; in fact, the products were manufactured by Matrix itself. Thus, the mark on the product properly indicated that Matrix was the ultimate source of

7

the goods, controlling the quality of the product via its control of the mark, and no consumer confusion was possible. Thus, the products were "genuine goods bearing a true mark" and their unauthorized sale could not constitute trademark infringement.

Applying this rule, the District Court, in granting summary judgment for defendants, held:

> [I]t is undisputed that ICEE of America is the owner of [the trademarks-in-suit] . . . . J&J's products are of the same origin and quality as ICEE Distributors' products. It is undisputed that the quality of the products sold by ICEE Distributors under the trademark "ICEE" and the quality of the products sold by J&J through Wal-Mart under the trademark "ICEE" is controlled by the same trademark owner, ICEE of America. . . . It is undisputed that J&J has the "ICEE" mark owner's consent to produce and sell frozen flavored ice products bearing the "ICEE" mark. Thus, there can be no consumer confusion. Without consumer confusion, ICEE Distributors has no claim for trademark infringement.

Memorandum Ruling, June 30, 2000, at 4-5.

Distributors contends that IOA did not, in fact, properly authorize J&J to use the ICEE mark on the squeeze tubes. Distributors makes three primary arguments contesting the District Court's holding. First, Distributors contends that the license agreement ("Tube License") that IOA granted J&J in February 2000 was "void at the outset" as a matter of law because it purported to grant J&J a right -- namely the right to sell ICEE-marked products

8

in Distributors' territory -- that IOA no longer had because of its exclusive license agreement with Distributors. Second, Distributors argues that, even if IOA had the right to grant such a license, there are genuine issues of material fact bearing on whether IOA ever gave authorized consent to J&J to use the ICEE mark on the tubes; in other words, the grant of the Tube License was invalid. Third, Distributors urges that, even if the Tube License was valid when issued, it does not excuse sales made prior to the execution of the Tube License. We address these arguments in turn.

B

Distributors maintains that J&J is liable for trademark infringement because the Tube License was void at the outset as a matter of law due to the conflict between it and Distributors' exclusive territorial license, which had been previously granted by IOA. Distributors relies on the Tenth Circuit opinion in San Juan Products, Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468 (10th Cir. 1988), for the proposition that a license granting rights already granted exclusively to an earlier licensee is void.

Distributors' reliance on San Juan Products is unpersuasive. The ruling in San Juan Products, although generally relevant, cannot control the instant case because the Tenth Circuit did not have occasion to decide specifically the effect of the duplicative

9

licensing on a claim of trademark-infringement. Trademark-owner San Juan Products, Inc. ("San Juan"), a maker of one-piece fiberglass swimming pools, had granted to Sun N' Surf exclusive marketing rights in a broadly defined territory including the state of Kansas. A few years later, San Juan signed a license agreement purportedly making San Juan Pools of Kansas, Inc. ("SJK") the exclusive dealer in Kansas. After SJK's license expired, SJK began selling pools allegedly "splashed" (i.e. copied) from San Juan models but marked with a different trade name. San Juan sued SJK for trademark infringement based on SJK's splashing of its pools. SJK defended, claiming a breach of the license. Although the Tenth Circuit did hold, inter alia, that the license agreement between San Juan and SJK was "void at the outset or voidable at its instance" because it purported to grant to SJK rights which had already been granted exclusively to Sun N' Surf, the court did so only in the context of explaining the absence of a claim for breach of the license; i.e. there was no breach because there was no license. The Tenth Circuit did not uphold a trademark-infringement claim against SJK based on the invalidity of SJK's license; in fact, San Juan's trademark-infringement claims were rejected because, according to the court, San Juan had no trademark rights in Kansas to begin with.

Distributors' argument, extrapolating from the holding of <u>San Juan Products</u> to find an infringement claim here, expands trademark law beyond its proper scope.  Trademark law is plainly not designed to protect licensees as such, but instead to protect the public -- i.e., consumers -- from confusion about a product's source and, relatedly, to protect trademark-owners' investment in the goodwill associated with their marks.  <u>See, e.g.</u>, <u>Two Pesos v. Taco Cabana</u>, 505 U.S. 763, 774 (1992).  Because the rights of a licensee are derivative of the rights of the trademark-owner,[1] a claim of infringement by a licensee seems impossible to maintain where the trademark-owner could not bring such a claim.  It is common-sense reasoning that a trademark-owner has no claim of trademark infringement against a manufacturer that produced approved marked goods <u>pursuant to an agreement with the mark-owner itself</u>; nor, then, can a claim of infringement be brought by the prior licensee, whose interest in its exclusive rights is properly protected by contract law.  Underlying this common-sense reasoning is the well-founded rule that we recognized in <u>Matrix Essentials</u> discussed above:  so long as the trademark indicates that the mark-owner is the ultimate source of approval for the marked product, there can

---

[1]Here, Distributors' license agreement specifically grants the right to bring infringement actions where the mark-owner fails to do so.

11

be no consumer confusion and, consequently, no infringement. Put another way, the fact that a subsequent license breaches the earlier licensee's contractual rights does not affect the fact that the mark-owner/licensor is the ultimate source of the product. Consequently, "[a]n exclusive licensee does not have a claim for trademark infringement against a subsequent licensee. The claim arises instead under inducing breach against the subsequent licensee and for breach of contract against the licensor." McCarthy on Trademarks and Unfair Competition § 25:30 (4th ed., 2005); see also Ballet Shoe Makers, 633 F.Supp. 1328 (S.D.N.Y. 1986); MJ & Partners Restaurant Ltd. Partnership v. Zadikoff, 10 F.Supp.2d 922, 927 (N.D. Ill. 1998). Here, the Tube License, on its face, is an exercise of trademark-owner IOA's control over the ICEE mark and the quality of goods bearing the ICEE mark. Notwithstanding the fact that the Tube License may constitute a breach of Distributors' license agreement with IOA, a claim of trademark infringement cannot lie so long as the Tube License establishes IOA's control over the squeeze tubes produced by J&J under the ICEE mark.

We therefore must turn to Distributors' arguments that genuine issues of material fact exist as to whether IOA did in fact authorize J&J to place the ICEE mark on J&J's squeeze tubes.

C

Distributors contends that there exist genuine issues of material fact as to whether the Tube License was properly approved by the IOA Board, and thus whether it legally manifests the consent of IOA. Distributors specifically contends that the trial of the breach-of-contract and trademark-dilution claims exhibited several fact issues supporting its contention that the Tube License was not a valid exercise of directorial control. Distributors argues, for example, that the Tube License is of questionable validity because of potential self-dealing: Dan Fachner, who signed the Tube License as President of IOA, is also the President of The ICEE Company, a subsidiary of J&J; Gerald S. Shreiber, a member of the IOA Board, signed the Tube License as J&J's President; Edward Steele, a member of the IOA Board, was a former employee of The ICEE Company. Distributors also argues that proper corporate procedures for entering into a license agreement were not followed. A central issue at the trial was whether Fachner executed the Tube License with the consent of the IOA Board; and the Tube License was not signed by IOA's Secretary, Chris Watkins, as allegedly required by IOA's corporate by-laws.

These factual contentions, which we will only assume to be relevant in determining whether the ICEE-marked squeeze tubes were properly authorized by IOA, were not presented by Distributors to the District Court when it considered defendants' motion for

13

summary judgment, which was granted before the first appeal and remand. Review of a grant of summary judgment is generally limited to the record before the District Court when it ruled on the motion. See Abbott v. Equity Group, Inc., 2 F.3d 613, 629 n.56 (5th Cir. 1993); Topalian v. Ehrman, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992). Distributors, however, moved for reconsideration of the summary judgment after we remanded the case in 2003.

A denial of a motion for reconsideration is reviewed for an abuse of discretion. Lake Hill Motors, Inc. v. Jim Bennett Yacht Sales, Inc., 246 F.3d 752, 757 (5th Cir. 2001). Under extraordinary circumstances, a court may entertain a motion for reconsideration in the light of evidence not in the summary judgment record. See Templet v. Hydrochem, Inc., 367 F.3d 473, 479 (5th Cir. 2004). However, "[a]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." Templet v. Hydrochem, Inc., 367 F.3d 473, 479 (5th Cir. 2004). Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167 (5th Cir. 1990), provides several factors to consider when a party seeks to upset a summary judgment by producing additional evidence: "(1) the reasons for the moving party's default, (2) the importance of the omitted evidence to the moving party's case, (3) whether the evidence was available to the movant before the nonmovant filed the

14

summary judgment motion, and (4) the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened." Templet, 367 F.3d at 482 (citing Lavespere, 910 F.2d at 174). "These factors . . . are simply illustrative and not exhaustive. . . . Rule 59(e) motions provide the district court with 'considerable discretion.'" Id. at 482-83.

Distributors states, in conclusory fashion, that we may properly consider the facts it recites. However, we think that the District Court did not abuse its discretion in denying the motion to reconsider. Distributors relies on facts that were plainly available or easily discovered before summary judgment. Distributors knew about the dual loyalties of the several IOA Board members and executives who are also executives of J&J or its subsidiary. The events in question did not occur after summary judgment; and no reason is offered that knowledge of these events was beyond Distributors' reach before then. The District Court therefore did not abuse its discretion by refusing to consider Distributors' newly proffered evidence.

Looking only at the summary judgment record, then, we see nothing that calls into question the validity of the Tube License, save for the legal argument that we disposed of in the previous section. The Tube License clearly granted J&J permission to use the ICEE trademark in the manufacture of squeeze tubes throughout

15

the country.  These products are genuine goods bearing a true mark; thus, their sale, even in Distributors' territory, could not constitute trademark infringement once the Tube License was in place.

D

We now turn to Distributors' contention that, even if the Tube License rendered J&J's use of the ICEE trademark non-infringing, there is a genuine issue of material fact as to whether IOA sanctioned J&J's use of the ICEE trademark before execution of the Tube License.

J&J began manufacturing squeeze tubes and selling them in Distributors' territory in 1999, but the Tube License was not executed until February 2000.  Distributors argues that the District Court's opinion and holding do not excuse J&J's pre-Tube-License sales because there was no license granting J&J the right to use the ICEE mark on its squeeze tubes, i.e., that the mark was not true because there was no authorization for its use.  The summary judgment opinion and the briefs on appeal indicate that the Tube License is the only license that purports to give J&J permission to use the ICEE mark on its squeeze tubes.  Therefore, we agree with Distributors that the District Court's opinion granting summary judgment on the trademark-infringement claim does

16

not cover sales in the period before the execution of the Tube License.

Defendants argued to the District Court, however, that they had received the IOA Board's approval first in December 1998 (before sales began) and again in November 1999. Defendants attached to their Reply Brief on Motion for Summary Judgment an affidavit (the "Fachner affidavit") and an exhibit (the "Board minutes") consisting of the minutes of the November 1999 IOA Board Meeting. They point out further that the Tube License contains a provision attesting to the IOA Board's past approval of J&J's use of the ICEE trademark on squeeze tubes.

We think defendants have not sustained their burden of showing that no genuine issue of material fact exists. While the Fachner affidavit does state that Fachner attended the December 1998 meeting and that there were no objections to J&J's sale of squeeze-up tubes at that time, it does not state, other than to leave it to inference, what action the Board took to grant J&J permission to use the mark. The attached Board minutes, which the Fachner affidavit cites to support contentions about the December 1998 meeting, are actually from the November 1999 meeting and contain little to support Fachner's contention other than Shreiber's statement that "J&J believed that tacit approval to sell the tubes nationwide had been received." Not only are these statements open

17

to challenge and critical evaluation given that they were made by the two J&J executives who signed the Tube License (one on behalf of IOA), there is sufficient evidence to say that the issue was not taken out of contention. The Board minutes undermine defendants' position because they show that the IOA Board in November 1999 considered the legal status of the squeeze tubes unsettled. The Board minutes also show that Dan Ursery, Distributors' representative, stated in response to Shreiber that he had objected at the December 1998 meeting. Furthermore, on summary judgment, Distributors submitted counter affidavits, from Dan Festervan (Distributors' President) and Ursery, both of which state that Distributors had at all times objected to J&J's sales of squeeze tubes. These affidavits do not speak to whether a Board vote took place in 1998, but they do undermine Fachner's contention that there were no objections at the December 1998 meeting. We simply cannot hold that there is no genuine issue of material fact as to whether the pre-Tube-License manufacture and sale of mark-bearing squeeze tubes were authorized by IOA. As for the Tube License's recitation of a past state of affairs, we find it to be of limited probative value because the agreement was executed by two J&J executives after Distributors had filed suit against J&J.

A fact-finder may ultimately determine that J&J did receive permission from IOA as early as December 1998 to use the ICEE

18

trademark on its squeeze tubes, but we are unable on a review of the summary judgment record to conclude irrefutably that that was indeed the case. We therefore hold that there is a genuine issue of material fact regarding J&J's permission to place the ICEE trademark on squeeze tubes prior to execution of the Tube License, and consequently whether the products sold during that period were "genuine goods bearing a true mark" or goods that infringed on the ICEE trademark.

## III

We now turn to Distributors' second ground for appeal. After we had affirmed the District Court's injunction prohibiting both J&J and Wal-Mart from selling the squeeze tubes in Distributors' territory, the District Court on remand entered final judgment reflecting that ruling. Defendants moved for modification of the injunction. The District Court then granted defendants' request, narrowing the scope of the injunction to bar sales of ICEE squeeze tubes only by J&J and not by Wal-Mart. The District Court reasoned that, because we had held the trademark dilution claim unfounded, the injunction as previously written could not be supported on breach-of-contract grounds alone. On appeal, Distributors argues that the injunction had been affirmed by this court and the mandate had issued making the decision final; thus, the injunction could

19

only be modified under special circumstances requiring changed law or facts, neither of which occurred.

A modification of an injunction is reviewed for an abuse of discretion. <u>Moses v. Washington Parish School Board</u>, 379 F.3d 319, 327 (5th Cir. 2004). Modification of an injunction is appropriate when the legal or factual circumstances justifying the injunction have changed. <u>See</u> <u>Black Association of New Orleans Fire Fighters v. City of New Orleans</u>, 853 F.2d 347, 354 (5th Cir. 1988) ("Ordinarily, the purpose of a motion to modify an injunction is to demonstrate that changed circumstances make the continuation of the order inequitable . . . ." ); <u>Keith v. Mullins</u>, 162 F.3d 539, 541 (8th Cir. 1998) (holding that a district court abuses its discretion when it modifies an injunction without a showing of a significant change in circumstances).

We agree with Distributors that the District Court's modification was inappropriate. The original injunction was fully considered and affirmed by this court in the previous appeal, and the finality of our affirmance of the injunction is not in question. Defendants passed an opportunity in the previous appeal -- and certainly on petition for rehearing, which was not pursued -- to argue that upholding the allegedly over-broad injunction was inappropriate given our reversal of the trademark-dilution verdict. Moreover, as we noted in our opinion, "J&J and Wal-Mart [did] not

20

argue that the injunction, based on IOA's breach of contract, is unenforceable as to them under <u>Federal Rule of Civil Procedure 65(d)</u> . . . . Therefore this argument is waived." 325 F.3d at 597 n.33. The District Court was not at liberty to modify the injunction except on a proper showing of a change of circumstances.

Defendants contend that the District Court did indeed properly rely on changed circumstances, namely, the legal basis of the District Court's injunction had changed in the light of our ruling that the trademark dilution verdict -- on which the injunction was partially based -- could not be sustained. The District Court reasoned that this court's ruling upholding only the breach-of-contract claim undermined the applicability of the injunction to any party beyond J&J. This argument, however, disregards the fact that we specifically held in our previous opinion that the breach-of-contract verdict supported the original injunction. 325 F.3d at 599 ("[W]e will not reverse the trial court's grant of injunction because it is independently sustainable as a proper remedy for breach of contract."). We did not suggest otherwise or remand for modification of the injunction in the light of our ruling. Our ruling, <u>affirming the original injunction on breach-of-contract grounds alone</u>, cannot be an appropriate basis for the district court's conclusion that the original injunction should <u>not</u> be

sustained because only the breach-of-contract grounds survived the earlier appeal.

Therefore, we find that the District Court abused its discretion in modifying the injunction, and we accordingly vacate the modification, and remand to allow the District Court to reinstate the original injunction.

## IV

For the foregoing reasons, the order of the District Court granting summary judgment in favor of defendants is AFFIRMED, in part, and REVERSED, in part, and the modification of the injunction previously affirmed by this court is VACATED. We REMAND to the District Court for further proceedings consistent with this opinion.