# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20113

ROBERT E. MOSS,

      Plaintiff - Appellant

v.

HARRIS COUNTY CONSTABLE PRECINCT ONE; ALAN ROSEN, Constable, Harris County Constable Precinct One; HARRIS COUNTY,

      Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2017

Lyle W. Cayce
Clerk

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Robert E. Moss appeals the district court's grant of summary judgment to Harris County on his discrimination and retaliation claims under the American with Disabilities Act ("ADA") and the Texas Labor Code ("TLC"), and on his First Amendment retaliation claim under 42 U.S.C. § 1983. For the reasons explained below, we AFFIRM.

## I. Background

In this wrongful termination case, Moss sued his former employer, Harris County, after Constable Alan Rosen terminated Moss's employment while he was on leave recovering from back surgery. Moss claims that Rosen wrongfully terminated his employment for two unrelated reasons: (1) his

disability and (2) his political speech. Prior to his termination in April 2013, Moss had worked as a deputy constable for Harris County Precinct One for sixteen years.

In 2012, Rosen was seeking elected office as Constable for Harris County Precinct One. In August 2012, at least one of Rosen's political opponents informed Moss of a potential chemical leak at a company in which Rosen had an ownership interest. Moss visited the site while off duty, took pictures of barrels that appeared to be leaking hazardous chemicals, and then, in accordance with his job duties, reported the potential chemical leak to the Precinct One Environmental Division. Later that same week, upon the request of his supervisor, Lieutenant Albert Lui, Moss discussed the pictures with the *Houston Chronicle* newspaper. He also told at least one co-worker that he was not supporting Rosen for constable, and told several co-workers about the potential chemical leak, a possible "cover up," and that Rosen had not completed all of his law enforcement classes.

At some point after the investigation into the potential chemical leak began, Rosen was made aware of the complaint against his company. Deputy Joe Danna, who was one of Rosen's political opponents, claims that, on October 29, 2012, during early voting, Rosen approached him about Moss. Rosen asked why Moss was so upset over "a little chemical spill" that had already been cleaned up, and claimed that Moss was "out of control" and Deputy Danna needed to do something about it. Similarly, according to Moss, a Rosen supporter called Moss and told him not to get involved in Rosen's election bid for constable. Moss understood the extent of his involvement in the constable's race to be the pictures he took evidencing the potential chemical leak.

While all of this was happening, Moss told a Precinct One human resources representative that he needed back surgery to treat a persistent back condition stemming from an earlier job. Moss believed he had sufficient

No. 16-20113

Family and Medical Leave Act (FMLA) time and accrued leave benefits to remain on leave until June 1, 2013. He took leave under the FMLA on November 7, 2012, and remained on leave after his FMLA leave expired. In January 2013, Moss's doctor instructed him and his employer that Moss could not return to work for another six months. During his leave, Moss discussed with Lieutenant Lui the possibility of moving to a light duty position, but there is no evidence that Moss was ever offered a light duty job.

Rosen was eventually elected constable and took office on January 1, 2013. On March 25, 2013, Moss sent a letter to Constable Rosen requesting to retire effective May 31, 2013. In response, on April 16, 2013, Rosen terminated Moss by letter, claiming that Moss had "exhausted all of [his] FMLA comp time, sick time, vacation time and all other acquired time." Moss's termination was reported to the Texas Commission on Law Enforcement as a "general discharge" rather than an "honorable discharge," which Moss disputed but did not appeal. Moss was also denied retirement benefits following his termination.

On May 17, 2013, Moss applied for, and later received, disability benefits under Social Security, testifying he had been permanently disabled as of April 16, 2013, the date he was fired. Just over a year later, he filed this lawsuit against both Rosen, in his individual and official capacity, and Harris County. Moss's Second Amended Complaint alleged breach of contract, disability discrimination in violation of Title I, Title II, and Title V of the ADA, along with analogous TLC provisions, and Section 1983 claims for free speech and due process violations under the First and Fourteenth Amendments of the U.S. Constitution, as well as violations of the Contract Clause of the U.S. Constitution. Moss voluntarily dismissed his claims against Rosen in his individual capacity. Harris County moved for summary judgment, and the district court granted Harris County's motion in all respects. Moss appeals the

No. 16-20113

adverse judgment on the disability discrimination claims under Title I, II, and V of the ADA, analogous TLC claims, and the Section 1983 free speech claim under the First Amendment.

## II.  Standard of Review

"This court 'reviews de novo the district court's grant of summary judgment, applying the same standard as the district court.'" *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting *Fabela v. Socorro Indep. Sch. Dist.,* 329 F.3d 409, 414 (5th Cir. 2003)). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court also views "all facts and evidence in the light most favorable to the non-moving party." *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted).  However, where the non-movant is the party who would have the burden of proof at trial, that party must point to evidence supporting its claim that raises a genuine issue of material fact.  *Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010).

## III.  Discussion

### A. ADA and TLC Claims

#### i.  Title I Discrimination and Failure-to-Accommodate Claims

Moss maintains that Harris County violated Title I of the ADA when it terminated him while he was on extended leave recovering from back surgery. We affirm the district court's dismissal of Moss's Title I claims because Moss failed to provide evidence showing that he was qualified for his job at the time of his termination.

"The ADA prohibits an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things,

4

terminating an individual's employment." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a)). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

The ADA also "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . .'" *Delaval*, 824 F.3d at 481 (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim, the plaintiff must show "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452.

A plaintiff can establish that he is "qualified" by showing that "either (1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697 (quoting *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1093 (5th Cir.1996)). "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval*, 824 F.3d at 481. Furthermore, reassignment to a different job may be a reasonable accommodation, but "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation

omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

Here, Moss failed to provide evidence showing that he was qualified for the job at the time of his termination. Moss argues that his sixteen years of honorable performance as a deputy constable show that he was qualified prior to his initial request for leave and that he remained qualified during his leave. We do not question whether Moss was qualified for his job prior to taking leave, instead the question is whether he was qualified at the time of his termination. *See Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 400 (5th Cir. 2012).[1] Instead of supporting Moss's claim, the evidence in the record shows that at the time of Moss's termination on April 16, 2013, Moss had been on leave since November 7, 2012, he had exhausted all of his FMLA leave, and his doctor had instructed him and his employer that he was incapable of returning to work until around July 2013. Accordingly, Moss was medically incapable of performing his duties as a deputy constable at the time of his termination and thus was not a qualified individual under the ADA, unless some reasonable accommodation can be identified that would have enabled him to perform the job. *See, e.g.*, *id.* (noting that a plaintiff who "was completely unable to come to work at the time of the adverse employment action" was "only 'qualified' if he could do the job with reasonable accommodation"); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 480–81 (5th Cir. 2000) (holding that the plaintiff could not perform the essential functions of the job at the time of her termination because during her leave she was "medically unable to perform the duties of her job" and shortly after she was terminated her "physician

---

[1] Although *Amsel* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

stated that she could not work"); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (holding that the plaintiff was "not a 'qualified individual with a disability' under the ADA" because he could not attend work while recuperating from an ankle surgery).

Moss argues that he remained qualified during his leave because (1) his leave would last only "through May 31, 2013," and thus was not indefinite; and, as an alternative accommodation, (2) he could "return to work in a light duty position before that date."[2]  As to the first possible accommodation that Moss identifies, the evidence shows that in addition to taking leave until May 31, 2013, Moss would also retire on that date.  That is, Moss would take leave and never return, which is not a reasonable accommodation and would never enable him to perform the essential functions of his job.  Moreover, the record does not indicate, and Moss does not argue, that Moss was willing to forgo retirement and return to his job as a deputy constable upon medical clearance from his doctor.  Although taking leave that is limited in duration may be a reasonable accommodation to enable an employee to perform the essential functions of the job upon return, taking leave without a specified date to return or, in this case, with the intent of never returning is not a reasonable accommodation.  *See Delaval*, 824 F.3d at 481; *Rogers*, 87 F.3d at 759–60 ("[R]easonable accommodation is by its terms . . . that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." (quoting *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir.1995))).

---

[2] Moss also argues that "continued employment in his own Deputy Constable position" would be a reasonable accommodation, but we fail to see how this is an accommodation at all, let alone a reasonable accommodation.  As already discussed, at the time of Moss's termination, he was unquestionably incapable of performing the essential functions of his job.

No. 16-20113

As to the second possible accommodation that Moss identifies, Moss failed to present any evidence that a light duty position, which Moss conceded was a different job than what he had, was vacant at the time of his termination or that he was capable of performing the essential functions of a light duty position. There is evidence that Moss discussed with Lieutenant Lui whether he might be capable of working a light duty position, but nothing showing that he, or his doctor, ever concluded that, despite his disability, he was capable of performing the essential functions of a light duty position. Even if he was capable of performing the work, Moss would still need to provide evidence supporting a finding that there was a light duty position available to be filled, which he did not do. Thus, Moss did not meet his burden of raising a genuine issue of material fact about whether transferring him to a light duty position would be a reasonable accommodation. *See Foreman*, 117 F.3d at 810.

It is the plaintiff's burden to show that he is qualified under the ADA. Because Moss failed to provide evidence showing any available reasonable accommodations that would have enabled him to perform the essential functions of his job, he cannot establish that he was qualified under the ADA at the time of his termination.[3] Accordingly, we affirm the summary judgment on Moss's disability discrimination and failure-to-accommodate claims.

### ii. Title V Retaliation Claim

Moss argues that, unlike discrimination claims under the ADA, retaliation claims do not require an employee to be qualified for the job. We

---

[3] Moss's failure to present facts demonstrating that he was qualified under the ADA forecloses his argument that Harris County impermissibly withdrew from an interactive process when it terminated his employment. Employers violate the ADA when their "unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (citation omitted). Harris County's termination of Moss could not lead to a failure to reasonably accommodate him when Moss cannot identify any reasonable accommodations that would have enabled him to perform the essential functions of his job.

8

disagree.  In the context of the ADEA, we have explained that "[r]etaliation claims are nothing more than a protection against discrimination," and because, in discrimination claims we "consistently have required that a plaintiff be qualified for the job he seeks, it would be illogical not to require one here."  *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 260 (5th Cir. 2001) (footnote omitted).  This same reasoning applies to retaliation claims under the ADA.  *See Lambus v. City of Jackson Fire Dep't*, 54 F. App'x 414, 2002 WL 31718479, at *3 (5th Cir. 2002) (citing *Holtzclaw* to support the requirement that a plaintiff must show he is qualified for the job in question to establish a prima facie retaliation claim under the ADA).  Accordingly, because Moss failed to raise a material issue of fact on the question of whether he is qualified for his job under the ADA, he also failed to make out a prima facie retaliation claim under the ADA.  *See id.* (affirming the dismissal of an ADA retaliation claim because the plaintiff failed to show that he was qualified for the job).[4]

### iii. Title II Discrimination Claim

Moss asserts that the district court erred when it dismissed his Title II claims after concluding that Title II of the ADA does not apply to employment discrimination claims.  We have held, however, that "[u]nlike Title I of the ADA, Title II does not create a cause of action for employment discrimination." *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015) (citation omitted).  All of Moss's ADA claims are based on employment discrimination, and Moss presents no evidence that Harris County discriminated against him outside of the employer–employee context, or that Harris County is not a

---

[4] The district court also dismissed Moss's failure-to-accommodate, wrongful discharge, and retaliation claims brought under the TLC.  On appeal, Moss argues that the TLC claims should be reversed for the same reasons the ADA claims should be reversed because TLC claims are evaluated under the same analytical framework as claims brought under the ADA. Therefore, we affirm the dismissal of Moss's analogous TLC claims for the same reasons we affirm the dismissal of his ADA claims.

covered entity under the ADA.[5]   Accordingly, we affirm the district court's dismissal of Moss's Title II claims.

## B. Section 1983 First Amendment Claim

In addition to his disability claims, Moss also maintains that Harris County violated his First Amendment rights because he was allegedly fired in retaliation for statements made in opposition to Rosen's campaign for constable.  The district court found that Moss's speech was not protected by the First Amendment because he spoke as an employee rather than as a citizen.   We affirm the judgment as to Moss's First Amendment claims because, to the extent he was not speaking as an employee, he failed to provide evidence showing that he was terminated because of his protected speech.

 "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)), *reh'g denied*, 2017 U.S.

---

[5] Moss argues that even though Harris County is a covered entity under Title I and Title II of the ADA, Constable Rosen, in his official capacity, is not a covered entity under Title I, and we should therefore create a narrow exception permitting application of Title II in instances where Constable Rosen engaged in employment discrimination.  It is well settled, however, that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004) (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)).  "Only for the purposes of the Eleventh Amendment are 'official-capacity actions for prospective relief . . . not treated as actions against the State.'"  *Id.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n.14 (1985)).  Moreover, Title I of the ADA defines "covered entity" as an "employer," 42 U.S.C. § 12111(2), and defines employer to include "any agent" of the employer, *id.* § 12111(5)(a).   Rosen, acting in his official capacity, was indisputably an agent of Harris County. *See McCarthy*, 381 F.3d at 414.  Indeed, elsewhere in his brief, Moss claims that he "does not challenge the district court's holding that Harris County was the real party in interest for Alan Rosen acting in his official capacity."

App. LEXIS 3949 (5th Cir. Jan. 10, 2017). It is well settled that "the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate," *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1417 (2016), including when political preferences are discussed with co-workers, *see Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). It is also clear, however, that when an employee makes statements pursuant to his job duties, he is speaking as an employee and his speech is not protected by the First Amendment. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

The evidence shows that Moss, pursuant to his official duties as a deputy constable, reported potential violations of environmental regulations to his superiors and the Precinct One Environmental Enforcement Division. Moreover, at the request of his supervisor, Moss spoke to the *Houston Chronicle* about the potential violations. We agree with the district court that Moss was speaking as an employee in both instances, and Moss does not appear to contest this finding on appeal. Rather, Moss argues, and the evidence supports, that he "discussed politics with his co-workers when he opposed Rosen during the 2012 campaign." For example, the evidence shows that Moss told at least one co-worker that he did not support Rosen for constable, and that he talked to numerous co-workers about Rosen and a potential "cover up."

Even if this additional evidence were sufficient to create a fact issue as to whether Moss spoke as a citizen, *see Davis*, 518 F.3d at 312 (identifying political discussions with co-workers as "prototypical protected speech by public employees"), Moss's First Amendment claim would still fail to survive summary judgment because the evidence does not support a finding that his political discussions with co-workers precipitated his termination. Rosen testified that he had no knowledge of Moss's speech, and Moss fails to point to any evidence on appeal indicating otherwise. Moss presents evidence showing

11

that: Rosen knew about a law enforcement investigation in response to a complaint that had been filed against his company; Rosen asked another deputy constable why Moss was so upset about the apparent chemical spill and told him that Moss was "out of control"; and a Rosen supporter told Moss not to get involved with Rosen's campaign for constable. When Moss was asked about his involvement with the race for constable as it related to the Rosen supporter's comment, Moss said his only involvement was taking the pictures that formed the basis of his formal complaint.

Considering all of this evidence together in the light most favorable to Moss, it might support a finding that Rosen knew that Moss was the person responsible for submitting a formal complaint about Rosen's business and was upset with Moss for his actions. But none of the evidence suggests that Rosen knew about Moss's political discussions with co-workers, or that Rosen retaliated against Moss for his political discussions. Absent evidence supporting a causal nexus between Moss's political discussions and his termination, Moss's First Amendment claim cannot be sustained. We therefore affirm the summary judgment on Moss's First Amendment claim. *See United States v. Real Property,* 123 F.3d 312, 313 (5th Cir. 1997) ("It is well-settled . . . that we will not reverse a judgment of the district court if it can be affirmed on any ground, regardless of whether the district court articulated the ground.").

AFFIRMED.