# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 27, 2021

Lyle W. Cayce
Clerk

No. 20-20376

Tracy Drake,

*Plaintiff—Appellant*,

*versus*

Spring Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2912

Before Clement, Haynes, and Wilson, *Circuit Judges*.

Per Curiam:*

Tracy Drake sued her former employer for alleged discrimination in violation of the Americans with Disabilities Act. The district court entered summary judgment for her employer, Spring Independent School District. Finding no error, we affirm.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

## I.

Tracy Drake joined Spring Independent School District ("Spring ISD") at the start of the 2008–09 school year as a Career and Technical Education ("CTE") teacher at Dueitt Middle School.[1]  After teaching for several years, Spring ISD hired Drake as Dueitt's registrar for the 2013–14 school year.  According to Drake, the job description contained only registrar duties.  But after she began to work as the registrar, she alleges that Spring ISD required her to perform the additional duties of an attendance clerk, essentially doing two jobs while being paid for one.

In 2014, after Drake's first year as the registrar, her supervisors gave her an unsatisfactory performance review.  In April 2014, Drake filed an internal grievance complaining about "the unreasonable amount of additional duties," "lack of support from her administration," and unprofessional treatment from the school's assistant principal.  One thing (relevant to this lawsuit) that the grievance did *not* mention was Drake's physical health, aside from an assertion that the extra duties and poor treatment "caused her considerable stress."  To the contrary, Drake's focus was the harm to her professional reputation within the district and to her future employment prospects.

By the summer, Drake and Spring ISD entered into a settlement agreement resolving the grievance.  So, Drake returned as Dueitt's registrar.  But in April 2015, Drake suffered a setback when her ulcerative colitis flared up and prevented her from working.  After consulting her gastroenterologist, Drake requested leave under the Family and Medical Leave Act ("FMLA").

---

[1] Drake has a master's degree in education and a bachelor's degree in business management.  She has twenty-one years of experience in education, including a term as summer school principal.

Initially, Spring ISD granted Drake one month of FMLA leave from April 27 to May 26. But on May 22, Drake's doctor wrote that she needed "at least" one more month off work. And on June 2, the doctor wrote another note recommending that Drake be off work for "at least" three months, subject to reevaluation on July 28. Spring ISD granted Drake 90 days of temporary medical leave in total, from April 27 to July 26.

Along with that approval, Spring ISD notified Drake of its policy governing temporary medical leave, including that "[t]he length of the leave may not exceed 90 calendar days including weekends and vacation days," that "[i]f the staff member has not been released by his/her physician by the end of the leave, the staff member can either resign or be terminated from their position," and that "[p]rincipals may post and fill the vacant position if it is in the best interest of the District to do so, even prior to the end of the ninety days."

On July 13, 2015, Spring ISD sent Drake a letter entitled, "Notification that leave time is expiring." In the letter, Spring ISD reminded Drake that her leave would expire on July 26. And it asked her to return an attached form by that date. The form offered three options: (1) certification of a doctor's release to return to work; (2) acknowledgment that her doctor had not released her for active duty and that "all district benefits will stop and I will no longer be employed by" Spring ISD; or (3) election not to return to work despite her doctor's release.

Drake never returned the form. But a few days before the end of her leave, on July 23, she spoke with a Spring ISD employee named Brenda Dorado about requesting additional temporary leave. On July 27, Drake sent Dorado and her boss, Pamela David, another doctor's note, which said that she would need to be off work for at least another week and that she had a follow-up scheduled in a couple days. The next day, Drake sent another

email to Dorado, asking what documentation she would need to submit for additional "temporary disability as I do not know when I will be released from the doctor's care." On July 30, Dorado followed up, asking Drake for a doctor's letter from her July 29 appointment. Drake sent the note, which explained that Drake "was scheduled for a Nuclear Medicine scan, Ultrasound[, and] infusions for her Ulcerative Colitis." The note concluded that Drake would be reevaluated after that testing "to determine her ability to return to [a] normal routine."

Drake also added in her email to Dorado:

As I previously mentioned, I asked the doctor if I could return to work on August 10th and he stated possibly as it will be based on the results of the test. In addition, he stated that it takes time for the treatments to take affect [*sic*] and we must diagnose why I am continuing to have bloody stools and other issues with my colon and digestive tract. I will contact you after I meet with the doctor concerning the results of the test.

Dorado responded within a matter of minutes: "Thank you for the follow up. As you are aware you have exceeded your time on FMLA, which means your position is no longer protected. I will call you on [August 3] to discuss the next steps." Drake emailed Dorado back on August 3 requesting a follow-up call with Dorado, but it appears the next communication was on August 5, when Drake called Dorado's boss, Pamela David. David told Drake that Spring ISD would be terminating her employment.

After that conversation, Drake emailed David, complaining that Spring ISD had denied her "request and rights for reasonable accommodations and temporary disability leave afforded to [her] under [the] Americans with Disabilities Act," and asked that Spring ISD reconsider her requests. On August 10, Spring ISD notified Drake by letter that her

employment was terminated, effective August 7, 2015, "due to exhaustion of days for FMLA/TML [Temporary Medical Leave]," and because she had neither "been cleared to return to work" nor "indicated [a] plan to return." Also on August 10, Drake's doctor sent a note that said Drake would be reevaluated again in four weeks after her gall bladder was removed.

On August 21, 2015, Drake filed a level one grievance with Spring ISD to appeal her termination. Drake alleged that Spring ISD did not offer reasonable accommodations for her disability and had retaliated against her for her grievance in April 2014. Drake asked for rescission of her termination, reinstatement to her position at Dueitt or a comparable position "for which [she was] certified," and additional leave until she was cleared for return to duty.

Drake also filed a charge of discrimination and retaliation with the Texas Workforce Commission Civil Rights Division and the EEOC on September 3, 2015. Her administrative charge alleged that Spring ISD violated the ADA by not offering her temporary disability leave and that Spring ISD should have engaged with her in the interactive process to design and offer her a reasonable accommodation. She also alleged that Spring ISD's actions were done in retaliation for her April 2014 grievance.

Spring ISD held a hearing on Drake's level one grievance on September 18. Meanwhile, after Drake's gall bladder surgery, her doctor wrote a note on September 22, 2015, saying that Drake could return to work part-time on October 26, working up to full-time two weeks later. And, while the outcome of the level one grievance was still unknown, Drake took a teaching job in nearby Aldine School District in October 2015.[2]

---

[2] Drake's annual salary in Aldine School District was about $69,000.

On October 30, Spring ISD offered to settle. Spring ISD's offer included: rescinding the August 7 termination; providing unpaid leave retroactively from July 27 through October 31; and rehiring her in a position comparable to the Dueitt registrar. Spring ISD suggested that the attendance clerk position was comparable, but also invited Drake to submit her top three alternatives. The school district emphasized that its proposed vacancies would "be more flexible in hours and schedules in case Ms. Drake is in need of additional accommodations." Regardless, Drake's attorney declined the offer the same day, stating that "Ms. Drake is not interested in any of the positions listed. She has a [m]aster's degree and is not willing to accept a paraprofessional position. She also has decided not to resign."[3]

On November 3, Spring ISD issued a level one grievance response, which mirrored its previous settlement offer. The district granted Drake retroactive unpaid leave from July 28 through November 6 and offered to rehire Drake in an open position comparable to her previous role. Noting that no registrar or teaching positions were available, Spring ISD offered to hire Drake as an attendance clerk, which Spring ISD again asserted was comparable to the registrar position. The school district directed Drake to report to work on November 9 and notified her that it would deem her failure to do so as a resignation. True enough, when Drake did not report to work on November 9, Spring ISD considered her resigned.

Drake filed a level two grievance on November 16 and was given a hearing on January 11, 2016. The district said that it had offered Drake a list of more than 50 positions to choose from, but that she had declined them all. Instead, Drake expressed interest in two positions: behavioral specialist and

---

[3] Drake later testified at her deposition that the attendance clerk salary was under $25,000 annually. For comparison, her registrar salary was over $60,000.

compliance director. But, according to the district, she was not qualified for either position. And, in any case, it said that the compliance director position had already been filled. Spring ISD further explained that it had granted Drake's request to be placed in a position comparable to the registrar, but that she resigned by not reporting to work as an attendance clerk on November 9, 2015. The school district also granted Drake's request to reinstate her health insurance coverage through November 2015, under the condition that she pay her share of the monthly premiums for the time she was on unpaid leave.

Finally, Drake filed a level three grievance complaint on February 2, 2016. Around this time, Drake's attorney and the school district discussed a CTE teaching role, but Drake refused the position. The Board of Trustees held a hearing on September 13, 2016, in which Drake participated and was represented by counsel (as she had been at the level one and two hearings). Her counsel argued that the dispute came down to the district's unacceptable alternative positions. Drake spoke to the Board, emphasizing the financial costs that she had incurred after losing her position and her medical insurance. By unanimous vote, the Board affirmed the earlier decisions.

Drake then brought this suit, raising claims of disability discrimination and retaliation under the ADA.[4] The district court granted Spring ISD's motion for summary judgment and denied Drake's motion for reconsideration. The court also excluded portions of Drake's declaration as "legal conclusions or conclusory assertions that will not be considered as summary judgment evidence."

---

[4] Drake failed to address her retaliation claim on appeal, even in passing. No section of her brief is dedicated to the claim. Indeed, no form of the word "retaliate" appears anywhere in her briefs. As a result, Drake has abandoned this claim. *See Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011).

## II.

Our summary judgment review is de novo, applying the same standard as the district court. *King v. Ill. Cent. R.R.*, 337 F.3d 550, 553 (5th Cir. 2003). We review the denial of Drake's motion for reconsideration for abuse of discretion. *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847 (5th Cir. 2006). Ordinarily, we review a district court's exclusion of evidence for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). But here, because Drake failed to object at the district court, we review for plain error. *Contogouris v. Pac. W. Res., L.L.C.*, 551 F. App'x 727, 734 (5th Cir. 2013) (unpublished).

## III.

### A.

We first address the district court's exclusion of portions of Drake's declaration as "legal conclusions or conclusory assertions that will not be considered as summary judgment evidence." Drake submitted her declaration in opposition to Spring ISD's motion for summary judgment. In response, Spring ISD objected in its reply brief and in a separately-filed list of objections. Drake did not respond at the district court, nor did she squarely address the district court's evidentiary ruling in her briefs here. As a result, our review is for plain error. *See id.*

We find no error, plain or otherwise. The excluded language asserted that Drake "engaged in protected activity," and that her requests for accommodation "did not pose an undue hardship." Those are textbook legal conclusions. *Cf. Tex. Peace Officers v. City of Dallas*, 58 F.3d 635 (5th Cir. 1995) (unpublished) (affirming exclusion of expert witness's legal conclusions). So are Drake's assertions that Spring ISD "discriminated and retaliated against" her, "violated the Americans with Disability Act," "wholly failed to engage in the good faith interactive process," and could not

"establish and/or justify a business reason why [Spring ISD] could not accommodate" her request to return as Dueitt's registrar. The court was also precise, differentiating between Drake's conclusory language, which it struck, and her factual allegations, which it did not. The district court did not err in excluding the selected portions of Drake's declaration.

## B.

We next address the district court's finding that Drake failed to exhaust her workload-related claims before the EEOC. In response to Spring ISD's motion for summary judgment, Drake claimed for the first time that she had requested a reduced workload as an ADA accommodation during the 2013–14 school year. The district court ruled that Drake's "allegation that Spring ISD refused to reduce her duties as an accommodation [was] not raised in her EEOC complaint," and was, therefore, unexhausted.

"As a precondition to seeking . . . judicial relief, . . . complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006); *see Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) ("[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA."); 42 U.S.C. § 12117(a) (incorporating Title VII procedures into the ADA). We review this question de novo. *Pacheco*, 448 F.3d at 788.

Drake claims that the district court erred but offers no legal or factual support. And her administrative complaint quite clearly relates only to Spring ISD's failure to accommodate her colitis flare and hospitalization in April through August 2015. True, Drake's EEOC charge mentioned her 2013–14 grievance complaint. But it did so to assert a distinct claim that Spring ISD's actions in 2015 were "retaliation for [her] prior [2013–14

grievance] complaint." That retaliation claim does not give life to the separate failure to accommodate that she urges here. We agree with the district court that Drake failed to exhaust this claim before the EEOC. *Pacheco*, 448 F.3d at 788.

We also agree with the district court that even if Drake had exhausted her claim, it is meritless. "To prevail on a failure-to-accommodate claim, the plaintiff must show (1) [she] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (internal quotations and citation omitted). The employee must alert the employer. "Special words, like 'reasonable accommodation,' need not be uttered, but the employee must explain that the proposed adjustment in working conditions is for a medical condition-related reason." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (cleaned up).

Drake's claim fails on prong two. She points to *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015), to support her assertion that Spring ISD was aware of her ulcerative colitis when she filed the 2013–14 grievance. But *Burton* is distinguishable. There, after the plaintiff inhaled chemical fumes on the job, she immediately reported the incident to her employer's personnel department. She also sent an email to her employer explaining that she was having heart palpitations after the incident. *Id.* at 230. There were also other emails and "multiple reports from supervisors explicitly tying complaints about Burton's conduct to her asserted medical needs." *Id.* at 231.

In contrast, the district court here found no record evidence that Drake informed Spring ISD of her ulcerative colitis at any time before her

request for medical leave in April 2015. Drake points to her declaration as evidence that she put Spring ISD on notice. But her declaration, which contains stricken, conclusory language, is not enough to sustain this claim. *See Vinewood Cap., LLC v. Dar Al-Maal Al-Islami Tr.*, 541 F. App'x 443, 447 (5th Cir. 2013) (unpublished) (citing *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004)).

Nor is there evidence for Drake's claim that supervisors and co-workers knew about her ulcerative colitis (let alone a connection between the colitis and her request for a reduced workload). She offered no supporting affidavits from co-workers. Worse still, her own deposition testimony contradicts her arguments here: she admitted that the 2013–14 grievance filings were "just about the work," and had nothing to do with her disability. Drake cannot point to her recent declaration to overcome that previous testimony. *See Free v. Wal-Mart La., L.L.C.*, 815 F. App'x 765, 766 (5th Cir. 2020) (unpublished) ("The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because 'a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.'" (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000))).

In short, Drake did not "explain" to Spring ISD "that the proposed adjustment in working conditions is for a medical condition-related reason." *Delaval*, 824 F.3d at 481 (cleaned up). As we said above, Drake failed to exhaust her reduced workload claim before the EEOC. And even if she had, the claim lacks merit.

## C.

We now move to Drake's two exhausted discrimination claims. Drake alleges that Spring ISD violated the ADA when it informed her of her

termination on August 7, 2015, and further during the 2015–16 grievance proceedings.

First, we address the termination claim. The district court found that Spring ISD did not violate the ADA because Drake was not qualified to return to work on August 7. The court also found it irrelevant that Spring ISD later extended Drake's unpaid leave in response to her grievance filings. Regardless of those subsequent measures, on August 7, "Drake was out of leave and could not provide a return date, so no accommodation existed."

Review of this claim begins and ends with our decision in *Moss v. Harris County Constable Precinct One*, 851 F.3d 413 (5th Cir. 2017). In *Moss*, the plaintiff was a deputy constable who took several months of FMLA leave for back surgery. *Id.* at 416. He was unable to return to work at the expiration of all available leave and was terminated. *Id.* So, he sued under the ADA, arguing that his years of "honorable performance as a deputy constable show[ed] that he was qualified prior to his initial request for leave and that he remained qualified during his leave." *Id.* at 418. But while this court found no problem believing that he was qualified for his job before he took leave, the question instead was "whether he was qualified at the time of his termination." *Id.* (citation omitted). He was not.

When the deputy constable was terminated, he had been on leave for over five months, exhausted all FMLA leave, "and his doctor had instructed him and his employer that he was incapable of returning to work" for at least two more months. *Id.* We affirmed dismissal of his claim because he was not capable of performing his duties with or without accommodation and was consequently not a qualified individual under the ADA. *Id.* (collecting cases).

So too here. Indeed, *Moss* is on all fours. When Spring ISD sent the termination letter on August 7, Drake had been on leave for several months, exhausted all FMLA leave, and was still unable to return to work for more

than two months. As a result, Drake was not a "qualified individual" protected from discharge under the ADA. 42 U.S.C. § 12112(a). Even with "reasonable accommodation," she was unable to "perform the essential functions of the employment position that [she] h[eld] or desire[d]." 42 U.S.C. § 12111(8). *See also Delaval*, 824 F.3d at 481 ("Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave."). The district court properly found in favor of Spring ISD on this count.

Next, we consider Spring ISD's actions during the 2015–16 grievance proceedings. Drake argues that Spring ISD unreasonably refused her requests to return as registrar or in a comparable position. "To prevail on [this] claim, [Drake] must establish that 1) [s]he has a disability; 2) [s]he is qualified for the position in which [s]he seeks employment; and 3) [s]he was discriminated against because of [her] disability." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted). "The plaintiff bears the burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." *Id.* (citation omitted). "A disabled employee has no right to a promotion, to choose what job to which [s]he will be assigned, or to receive the same compensation as [s]he received previously." *Id.* (citation omitted). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant." *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997).

Drake argues that the district court erred because the attendance clerk position that Spring ISD offered was not comparable to her prior position as registrar. She claims that the attendance clerk position amounted to "a demotion, and a giant pay cut." She points out that just before she applied as registrar, Spring ISD had reclassified the position from paraprofessional to professional. By contrast, she argues that the attendance clerk was a

paraprofessional position. In addition, compared to her registrar salary of over $60,000, Drake testified that the attendance clerk salary was under $25,000 annually.[5]

Even so, Drake does not address the other alternatives that Spring ISD offered her, including any of 50 positions. To be sure, Drake's argument at the level three grievance hearing indicates that at least some of the 50 positions were not similar, including positions as a bus driver or an aide. But there is no evidence in the record about the bulk of those positions. Nor does Drake address her rejection of a CTE teaching role. She also does not challenge the district court's finding that Spring ISD had already filled the registrar position by the time she recovered and could have returned to work. She does not address our caselaw saying that she had "no right . . . to receive the same compensation as [s]he received previously." *Jenkins*, 487 F.3d at 315. Nor, given all the school district's proposals, does she explain how Spring ISD fell short of the "good faith interactive process" that the ADA requires. *Id.* at 316.

Drake claims that her counterproposals were comparable whereas Spring ISD's offers were not. Yet, the record shows that Spring ISD had already filled the compliance director position and that Drake was unqualified in any case to fill it or the behavior specialist job. *See* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."). Drake admitted at her deposition that she did not meet the

---

[5] Drake also asserts that Spring ISD's offer to bring Drake back as attendance clerk was "in and of itself another adverse action." Drake offers no legal citation, and the claim does not warrant further discussion.

requirements for those positions; her only experience was observational and during an internship she had many years before.

As a result, Drake has not met her "burden of proving that an available position exists that [s]he was qualified for and could, with reasonable accommodations, perform." *Jenkins*, 487 F.3d at 315 (citation omitted). Contrary to Drake's assertions, Spring ISD's various offers are strong evidence of a good faith effort at accommodation. The school district initially offered to place Drake in an attendance clerk position that the district said would offer a more relaxed schedule as she returned from surgery. When she declined that position, the school district offered any of 50 others. Then, when she declined those, the school district offered to hire her as a CTE teacher. Even after that, Spring ISD asked Drake's attorney "what she is interested in and what she is wanting?" Aside from one position for which she was unqualified, Drake has not identified a single alternative. The district court correctly entered summary judgment for Spring ISD on this claim.

## D.

Finally, Drake appeals the district court's denial of her motion for reconsideration. Reconsideration under Rule 59(e) is "an extraordinary remedy" that "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted). It "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* (citations omitted).

Yet, that is all Drake offered at the district court, and all she argues here. The crux of her argument in front of the district court was a rehashing of the same arguments that failed on summary judgment, plus the assertion that the court "missed or failed to mention" the naked and unsupported

assertions in her declaration.  That was not only an improper argument under Rule 59, it was untrue; the district court clearly ruled on Drake's declaration. Her arguments here fare no better.  Indeed, they are nothing more than a repetition of the same assertions she made or could have made at the summary judgment stage.  The district court did not abuse its discretion in denying Drake's motion for reconsideration.

*    *    *

AFFIRMED.