# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-50914

———————————

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2025

Lyle W. Cayce
Clerk

David Diaz,

*Plaintiff—Appellant*,

*versus*

Maximus Services, L.L.C.;
Maximus Federal Services, Incorporated,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:22-CV-463

———————————————————————

Before Smith, Clement, and Duncan, *Circuit Judges*.

Per Curiam:[*]

David Diaz brings disability-discrimination and failure-to-accommo-ate claims, under the Texas Commission on Human Rights Act ("TCHRA"), against his former employer, Maximus Services, L.L.C., and Maximus Federal Services, Inc. (jointly "Maximus"). Diaz alleges that Maximus (1) terminated him because of his learning disability and (2) failed to

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

accommodate the limitations resulting from his disability.  The district court granted Maximus's motion for summary judgment on all of Diaz's claims, and this appeal followed.  We affirm.

I.

Maximus is a business that facilitates various federal programs, and it first hired Diaz to work as a coordinator on an El Paso census project beginning in January 2020.  Diaz then applied and was accepted to transfer to another Maximus project, the Florida (Covid) contact tracing project (the "Florida Project").  Diaz started work in July 2020.  He worked remotely as one of eight workforce management ("WFM") analysts on the Florida Project, where his job involved schedule management for the 1100 customer service representatives who worked at the Project's call center.  Pam Willingham and Lakeisha Jesters were the supervisors of the eight-member WFM cohort, and Susan Reyes was the WFM manager.

Diaz alleges that he has a "learning disability" that "substantially limits" his brain function, spelling, learning, reading, concentrating, thinking, writing, and interactions with others.  Citing his deposition, Diaz asserts that he told Maximus about his learning disability and requested that his supervisors give him "time and understanding."

On November 30, 2020, Willingham and Jesters met with Diaz to discuss attendance and performance concerns, including concerns about the quality of his email communication.  In response to Willingham's feedback about communication, Diaz mentioned that he had a learning disability.  The parties offer starkly different accounts of what happened next.  Willingham contends that she shared that her brother overcame a learning disability and that she offered strategies to help Diaz succeed.  Diaz, on the other hand, claims that Willingham "made fun of and belittled him," recounting that "she started telling me that her niece and her uncle suffer from mental

retardation and that she understood . . . ."

The following day, Willingham sent an email to Diaz recapping the meeting, offering suggestions for improvement, and expressing a desire to help Diaz succeed. The email explained that it also served as a "written warning for your performance."

That same day, December 1, Reyes announced the supervisor assignments for the Florida Project, and Diaz was assigned to Willingham. Diaz then emailed Reyes on December 2 to request a transfer to another supervisor. In that email, Diaz mentioned his learning disability and cited Willingham's "unprofessional" ridicule and humiliation as the reason for his request. Maximus did not reassign Diaz to a different supervisor.

Within several days of emailing Reyes, Diaz met with Maximus's human resources department about his concern that Willingham had discriminated against him. HR subsequently removed Diaz's written warning and changed it to a coaching on performance concerns about attendance and communication.

On December 28, Reyes notified Diaz that he was being terminated per a staff reduction. Reyes sent an email to the entire WFM team on December 31, explaining that the Florida Project would continue through March 2021 but that its scope was being reduced from 1100 to about 315 customer service representatives. Thus, the company needed to keep only five of its eight WFM analysts; two of the eight analysts would be transferred to other projects, but Diaz would be leaving Maximus. Reyes states in her deposition and declaration that she terminated Diaz because of the staff reduction and that he was selected on account of ongoing concerns with his attendance and performance.

After filing a charge of discrimination with the Texas Workforce Commission and the EEOC, Diaz sued Maximus in Texas state court. Diaz

asserted four claims under the TCHRA: disability discrimination, failure to accommodate, race or national origin discrimination, and retaliation. Maximus removed to federal court based on diversity jurisdiction. The district court granted Maximus's motion for summary judgment as to all the claims. With respect to the disability-discrimination and failure-to-accommodate claims, the court held that they both fail because Diaz did not adduce evidence showing that he had a qualifying disability under the TCHRA.

On appeal, Diaz challenges the summary judgment only as to his claims that he was terminated because of his learning disability and that Maximus failed to accommodate the limitations resulting from that disability.

## II.

The TCHRA prohibits employers from discriminating against qualified individuals because of their disability. Tex. Lab. Code §§ 21.051, 21.105. "Because TCHRA parallels the language of the [Americans with Disabilities Act], Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 n.2 (5th Cir. 2019) (quotation omitted). "In a discriminatory-termination action under the [TCHRA], the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (cleaned up).

Diaz never contended in district court that he had direct evidence of discrimination, so we follow the *McDonnell Douglas* burden-shifting framework,[1] under which Diaz must first present a *prima facie* case of discrimina-

---

[1] Diaz attempts to advance a direct-evidence theory for the first time on appeal, but the scope of our review is "limited to matters presented to the district court." *Diamond*

tion. *Id.* If he succeeds, then Maximus "must articulate a legitimate, non-discriminatory reason for terminating" Diaz. *Id.* Once it does so, "the burden shifts back to [Diaz] to show that [Maximus's] proffered reason is pretextual." *Id.*

To establish a *prima facie* case of disability discrimination under the TCHRA, "'a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.'" *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *LHC Grp.*, 773 F.3d at 697).

## A.

Diaz's *prima facie* case turns on whether he presented evidence of a qualifying disability under the TCHRA; Maximus does not dispute that Diaz was qualified for the job or that he was terminated. The TCHRA defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity." Tex. Lab. Code § 21.002(6). "Major life activities" include, *inter alia*, "learning, reading, concentrating, thinking, communicating," and "neurological" and "brain" functions. *Id.* § 21.002(11-a).

The district court held that Diaz failed to create a genuine dispute of material fact as to the existence of a qualifying disability. The "sole evidence" Diaz provided that his learning disability "substantially impacts a major life activity" was that "he received educational accommodations in high school and college."[2] "But these accommodations, on their own, are

_____

*Servs. Corp. vv. RLB Contracting, Inc.*, 113 F.4th 430, 438 (5th Cir. 2024) (quotation omitted). Therefore, that theory "cannot be considered or raised on appeal." *Id.* (quotation omitted).

[2] The district court was correct on this point. Diaz's response to the motion for summary judgment devotes only about a page to the threshold question of whether he is

5

No. 23-50914

insufficient to show he had a qualifying disability under the TCHRA."[3]  The district court conucted no additional analysis on whether Diaz's evidence of accommodations could establish disability.

Congress passed the ADA Amendments Act of 2008 to broaden the "substantially limits" standard and make it easier for disabilities to qualify under the statute. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590–91 (5th Cir. 2016).  In response, Texas amended the TCHRA later that year to add provisions "correspond[ing] to the federal amendments." *City of Hous. v. Proler*, 437 S.W.3d 529, 533 n.17 (Tex. 2014).  "Determining whether a plaintiff has a disability" still "requires an individualized assessment of the impact of the impairment on an individual's major life activities." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 479 (5th Cir. 2023).  But the ADA's implementing regulations provide that "some types of impairments . . . will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity."[4]

"[I]t should easily be concluded that . . . an intellectual disability . . . substantially limits brain function."  29 C.F.R. § 1630.2(j)(3)(iii).  So, "the necessary individualized assessment should be particularly simple and

---

disabled for purposes of the TCHRA.  The only evidence Diaz adduced to show a "substantial limitation" was deposition testimony indicating that he received accommodations in school.  On appeal, Diaz attempts to point us to additional evidence that allegedly shows a qualifying disability.  "This attempt comes far too late—obviously, it should have been done in the district court." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

[3] For that proposition, the district court cited *Glueck v. Nat'l Conf. of Bar Exam'rs*, No. 5:17-cv-451, 2018 WL 3977891, at *6 (W.D. Tex. Aug. 20, 2018).

[4] 29 C.F.R. § 1630.2(j)(3)(ii); *see Proler*, 437 S.W.3d at 533 n.17 (citing 29 C.F.R. § 1630.2 to interpret both the ADA and the TCHRA and noting that "the definition of disability in chapter 21 of the Texas Labor Code is essentially the same as in the ADA.") (cleaned up); *see also Dillard v. SNC-Lavalin Eng'rs & Constructors Inc.*, 629 S.W.3d 692, 699–700 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (applying federal ADA regulations to TCHRA claim).

straightforward." *Id.* § 1630.2(j)(3)(ii).  As evidence of his learning disability, Diaz explained that he received accommodations in high school and college.  The cited portion of Diaz's deposition states that those accommodations included separate testing rooms, additional time, and individual tutoring.  Diaz explained that his learning disability necessitated those accommodations "because it takes me time to read and also the pressure of timed tests."  *See* 29 C.F.R. § 1630.2(j)(4)(i) ("[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider . . . the duration of time it takes the individual to perform the major life activity[.]").

We need not decide whether Diaz could establish a qualifying disability under the TCHRA.  Even if he could establish a *prima facie* case, he cannot show that Maximus's stated reason for the termination was pretext for discrimination.  *See United States v. McSween*, 53 F.3d 684, 687 n.3 (5th Cir. 1995) ("[W]e can affirm the lower court's decision on any grounds supported by the record.").

## B.

At the second step of the *McDonnell Douglas* framework, the burden shifts to Maximus to provide a legitimate, nondiscriminatory reason for terminating Diaz.  *LHC Grp.*, 773 F.3d at 694.  Maximus "explained that there was a reduction in staff on the [Florida Project], and Diaz was selected for termination due to attendance and performance issues."  Diaz did not dispute that that reason qualifies as legitimate and nondiscriminatory; he moved straight to the third step of the burden-shifting framework, contending that Maximus's reason was pretextual.[5]

---

[5] Diaz now avers, for the first time on appeal, that Maximus's reason was itself discriminatory because the "performance" issues Maximus cited resulted directly from

Diaz presented the district court with four theories that Maximus's stated reason was pretext for discrimination. None of them creates a genuine dispute of material fact; a reasonable jury could not find pretext based on the evidence Diaz presented.

First, Diaz asserts that there were no previously documented reasons for his discharge. But the record demonstrates otherwise. Reyes's December 31, 2020, email to the WFM team explained that Maximus was reducing the number of WFM analysts from eight to five because of the decrease in customer service representatives.

Second, Diaz contends that Reyes "gave conflicting reasons" for Diaz's termination. Specifically, Diaz avers that the "staff reduction" and "attendance and performance" reasons were separate—and inconsistent— explanations. But as Maximus points out, its reasoning was fully consistent: When it needed to reduce its staff, Maximus selected Diaz because he had attendance and performance issues.

Third, Diaz asserts that Maximus violated its own disciplinary and investigation policies in several ways. But even if that is true, it's irrelevant. Diaz was not terminated under Maximus's disciplinary policy; he was selected for discharge as part of its staff reduction.

Finally, Diaz contends that he was the only team member discharged and that everyone else was reassigned. Maximus does not challenge that factual contention, and Reyes's email indicated that Diaz is correct: Two employees were moved to other projects, and Diaz was the only one terminated. But that fact does not cast any doubt on Maximus's staff-reduction

_____

Diaz's disability. But we limit our review to "matters presented to the district court and, if a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Diamond Servs.*, 113 F.4th at 438 (cleaned up).

rationale.  Maximus reduced the Florida Project WFM analyst team from eight members to five.  Diaz was hired as a limited-service employee specific to the Florida Project, and he does not allege that there were other open positions at Maximus to which they could have transferred him.[6]

We affirm the summary judgment on Diaz's discriminatory-termination claim.

## III.

Diaz challenges the summary judgment on his failure-to-accommodate claim, which requires him to show "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by [Maximus]; and (3) [Maximus] failed to make reasonable accommodations for such known limitations."  *Moss*, 851 F.3d at 417 (quotations omitted).

As with Diaz's discriminatory-termination claim, the existence of a qualifying disability is a threshold issue.  We again pretermit any decision on that issue because Diaz cannot show that Maximus failed to make reasonable accommodations.  That's the case *even if* Maximus knew of Diaz's disability

---

[6] In response to Maximus's motion for summary judgment, Diaz also asserted, as evidence of pretext, that he was "replaced" by other employees.  Diaz presented that argument to support his retaliation claim, but it would not create a genuine dispute of material fact even if we considered it in the context of his discriminatory-termination claim.  As evidence that he was "replaced," Diaz points only to an assertion in his EEOC charge: "The work was not slowing down and I am aware I was replaced by three temporary employees."

Diaz's assertion does not square with his own answers to interrogatories.  When he was asked to name those employees, one of the names Diaz provided had been identified as one of the five chosen to remain on the Florida Project, and another one had been selected to move to a different project.  Diaz's burden to avoid summary judgment "will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quotations omitted).

and its consequential limitations.[7]

A plaintiff cannot succeed on a failure-to-accommodate claim if he did not request an accommodation. "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Taylor*, 93 F.3d at 165. To be sure, "[s]pecial words, like 'reasonable accommodation,' need not be uttered." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). But because the law "does not require clairvoyance, the burden falls on the plaintiff to specifically identify the disability and resulting limitations and to request an accommodation *in direct and specific terms*." *Windham v. Harris County*, 875 F.3d 229, 236–37 (5th Cir. 2017) (cleaned up) (emphasis added). Once a request has been made, the law "requires an employer to engage in an interactive process with an employee who requests an accommodation for [his] disability to ascertain what changes could allow [him] to continue working." *Dillard v. City of Austin*, 837 F.3d 557, 562 (5th Cir. 2016).

Diaz alleges that he asked Maximus for two accommodations: (1) "time and understanding" and (2) a transfer to a new supervisor. As to the latter, the district court correctly held that it did not constitute a request for accommodation because Diaz "does not explain how this request was connected in any way to a disability-related limitation."

It is doubtful whether Diaz's first alleged request—for "time and understanding"—sufficed to trigger Maximus's duty to engage in the "interactive process" of finding an accommodation. Diaz states in his deposition that he "requested . . . the time and patience and understanding that it may

---

[7] For a plaintiff to establish a failure to accommodate, the employer must know of the consequential *limitations resulting* from the disability—not merely the disability itself. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996).

take me a little time to write emails or work." We need not decide whether that qualifies as a "request [for] an accommodation in direct and specific terms," *Windham*, 875 F.3d at 237 (quotations omitted), because Maximus sufficiently responded to Diaz's vague request.

The day after the November 30 meeting among Diaz, Jesters, and Willingham, Willingham sent Diaz a follow-up email providing specific suggestions for Diaz to improve in his communication. She suggested that Diaz "use spell/grammar check tools" and "read your communication aloud before sending messages. That email also acknowledged that Diaz disclosed a learning disability and explained that Maximus wanted to discuss "accommodations that may make you more successful." To be sure, the email also noted that it constituted a written warning. But that warning was later removed.

Diaz does not contend that Willingham's suggestions were insufficient or that he followed up to discuss his request further. Nor does Diaz allege that his subsequent communications with HR related to anything beyond his desire for a new supervisor and his complaint about Willingham's alleged discrimination. Given the vagueness of Diaz's request for "time and understanding," Maximus's response suffices even if we were to hold that Diaz triggered a duty to find a reasonable accommodation.

The summary judgment is AFFIRMED.