# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2021

Lyle W. Cayce
Clerk

No. 19-11028

CHRISTIAN JENNINGS,

*Plaintiff—Appellant*,

*versus*

TOWERS WATSON, *an entity*, *also known as* WILLIS TOWERS
WATSON P.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-3040

Before KING, HIGGINSON, and WILSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

Christian Jennings sued her former employer Towers Watson ("WTW," also known as Willis Towers Watson), alleging civil conspiracy under Texas law, a hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), disability discrimination under the ADA, racial discrimination, and wrongful termination. After both parties moved for summary judgment, the district court granted WTW's motion and denied Jennings's. Jennings now appeals, and we AFFIRM.

No. 19-11028

I.

In May 2016, Jennings was hired by WTW to work as a seasonal benefits advisor. She had served as a benefits advisor for WTW for each of the three prior seasons.

On May 24, 2016, during the second day of mandatory training, Jennings fell and sustained injuries in WTW's parking lot. A doctor diagnosed Jennings with left ankle pain and right shin pain the following day. The doctor cleared Jennings to return to work that day with certain restrictions which were expected to last until June 1, 2016. These restrictions included limiting walking to two hours per day and refraining from climbing stairs.

Jennings did not return to the training, which was held on the second floor of a building, because she believed that the building did not have an accessible elevator. The parties dispute whether WTW provided Jennings access to an elevator she could use to attend the training. Jennings claims that she asked WTW to have a trainer meet her on the first floor to continue her training and that this request was denied. Instead, WTW informed Jennings that she could restart her training on June 6, 2016. Jennings claims that WTW told her that if she did not report for training on June 6, 2016, she would be unemployed. On June 6, Jennings restarted, and subsequently completed, her training.

On June 15, 2016, Jennings's supervisor, Kim "Bo" Baker, sent an email to Jennings and several other employees instructing them to call the "manager-on-duty line" ("MOD line") and text his cell phone if they were going to be absent or tardy.

On June 20, 2016, Jennings filed a Charge of Discrimination (the "First Charge") with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged race and disability discrimination, failure to

accommodate her disability, and retaliation. In the First Charge, Jennings asserted that after being injured on the job and seeing a doctor, her reasonable accommodation was denied and her start date was changed to June 6, 2016. According to the First Charge, Jennings was told that she must return to work by that date regardless of her condition. Jennings further claimed that she was not paid for two-and-a-half training days she attended in May 2016, and that she was aware of similarly situated white coworkers who received different treatment in this regard.[1]

On July 6, 2016, Baker issued and documented a verbal warning to Jennings for purported attendance issues. According to the documented warning, throughout June and July 2016, Jennings was absent seven times, tardy twice, left work early twice, and failed to inform Baker that she would be absent or tardy. The warning advised that Jennings's failure to correct her behavior could result in a written warning and possible termination.

Two days later, on July 8, 2016, Baker issued Jennings a written warning based on additional asserted attendance violations. The written warning noted Jennings's prior absences, as well as her absence that day. In response to the documented warning, Jennings commented that she had been having computer problems and was being mistreated and treated differently than other employees.

Four days later, on July 12, 2016, WTW terminated plaintiff "for insubordination: specifically, her violations of attendance policies and procedures."

Jennings filed a second Charge of Discrimination with the EEOC (the "Second Charge") two days later, alleging retaliation for filing the First

---

[1] The EEOC issued Jennings a right-to-sue letter on her First Charge in January 2018.

No. 19-11028

Charge. The EEOC issued Jennings a right-to-sue letter for the Second Charge in September 2017.

Jennings, proceeding pro se, sued WTW in federal district court in November 2017, alleging civil conspiracy under Texas law, a hostile work environment under Title VII and the ADA, disability discrimination under the ADA, racial discrimination, and wrongful termination.

WTW sought dismissal of Jennings's civil conspiracy and wrongful termination claims. A magistrate judge recommended dismissal of the civil conspiracy claim and advised that Jennings's wrongful termination claim was based on her claims of race and disability discrimination, rather than constituting a freestanding claim. The district court accepted the magistrate judge's findings, conclusions, and recommendation and dismissed Jennings's civil conspiracy claim. Jennings did not appeal this order.

Jennings eventually moved for summary judgment on her remaining claims, and WTW subsequently filed its own summary judgment motion. The magistrate judge recommended denying Jennings's summary judgment motion and granting WTW's. The magistrate judge concluded that Jennings had failed to exhaust her administrative remedies for her race discrimination, disability discrimination, and hostile work environment claims. The magistrate judge additionally reasoned that even if Jennings had exhausted her administrative remedies, her claims failed as a matter of law because (1) Jennings's injury was "not a substantially limiting impairment" under the ADA as there was no evidence of any permanent injury; (2) Jennings had not established an "adverse employment action" to maintain her race discrimination claim; (3) she also had not presented evidence that WTW's asserted basis for her firing was pretextual; and (4) she had offered no evidence that WTW's "alleged conduct was objectively and subjectively abusive," as required to maintain her hostile work environment claim.

No. 19-11028

The district court accepted the magistrate judge's findings, conclusions, and recommendation, granted WTW's summary judgment motion, denied Jennings's, and taxed costs against Jennings. Jennings timely appealed. The district court denied Jennings leave to appeal in forma pauperis ("IFP").

Jennings subsequently moved the district court to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59, and the district court denied the motion. The district court again denied Jennings leave to proceed IFP. Jennings filed a timely amended notice of appeal from the denial of her Rule 59 motion.

Our court granted Jennings leave to proceed IFP on appeal, noting that (1) Jennings arguably exhausted her disability discrimination claim through her EEOC charges, and (2) "the district court's determination that Jennings's temporary ankle injury failed to establish a disability did not consider the 2008 amendments to the ADA and subsequent cases."

II.

We review a district court's grant of summary judgment de novo. *Renwick v. PNK Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)). "Summary judgment is proper if the pleadings and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (citing FED. R. CIV. P. 56(a)). In making this determination, we construe "all facts and evidence in the light most favorable to the non-moving party." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013)). However, where the non-movant "would have the burden of proof at trial, that party must point to evidence

No. 19-11028

supporting its claim that raises a genuine issue of material fact." *Id.* (citing *Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1010 (5th Cir. 2010)). "A pro se litigant's pleadings are construed liberally." *Butler v. Porter*, 999 F.3d 287, 292 (5th Cir. 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

## III.

We first consider the district court's determination that Jennings failed to administratively exhaust her claims of (1) disability discrimination and failure to accommodate under the ADA, (2) race discrimination under Title VII, and (3) a hostile work environment under the ADA and Title VII.[2] We review this determination de novo. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006) (citing *Martinez v. Dep't of U.S. Army*, 317 F.3d 511, 512 (5th Cir. 2003); *Randel v. Dep't of U.S. Navy*, 157 F.3d 392, 395 (5th Cir. 1998)).

Before a plaintiff may file suit in federal court under either Title VII or the ADA, the plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 378–79 (5th Cir. 2019) (per curiam) (citing *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 77 (5th Cir. 1982); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *Foster v. Nat'l Bank of Bossier City*, 857 F.2d 1058, 1060 (5th Cir. 1988)). In determining whether a plaintiff has exhausted a particular claim, "the scope of an EEOC complaint should be construed liberally." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco*, 448 F.3d at 788). "On the other hand,

---

[2] Jennings argues that the district court erred by failing to consider her wrongful termination claim in its summary judgment order. However, as the district court had previously concluded, Jennings's asserted wrongful termination claim is properly viewed as part of her race and disability discrimination claims. We therefore decline to consider it as a freestanding claim.

a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* (quoting *Pacheco*, 448 F.3d at 788–89). "To balance these considerations, 'this court interprets what is properly embraced in review of a Title[] VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (internal quotation marks omitted) (quoting *Pacheco*, 448 F.3d at 789). "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.* (quoting *Pacheco*, 448 F.3d at 789).

The district court concluded that Jennings failed to exhaust her disability discrimination and failure to accommodate claims because the First Charge "expressly constrained her discrimination and retaliation allegations to May 26, 2016, [] which predated all of the alleged discriminatory actions alleged in the amended complaint" and the Second Charge was "wholly devoid of any allegation of race- or disability-based discrimination."

In this regard, the district court construed the scope of the investigation that could reasonably be expected to grow out Jennings's EEOC charges too narrowly. The First Charge asserted, in pertinent part:

> On May 24, 2016, I was injured on the job. On May 25, 2016, I went to see [a] medical doctor who instructed me to go home. On May 26, 2016, I requested a reasonable accommodation so that I could continue training. Rather than engage me in the interactive process, Respondent laid me off and asked me to sign a document that would change my start to June 6, 2016. I was instructed that I must come back to work by that date whether my injury was better or not.

No. 19-11028

Jennings's Second Charge provided: "On July 12, 2016, I was terminated from my position as a Super Benefit Advisor, in retaliation for filing a charge of discrimination with EEOC." Jennings's operative complaint bases her disability discrimination and failure-to-accommodate claims on the following factual allegations: "After Jennings was seriously injured in the employer's parking lot on her way back to work no responsible employee seriously addressed her clearly documented injuries and simply falsely accused her of malingering and then conspired to discharge her to unlawfully avoid the issue of her lawfully required accommodations."

The factual allegations underlying Jennings's failure-to-accommodate claim—that after being injured while at work on May 24, 2016, she requested an accommodation and did not receive it—were asserted in her First Charge. In support of her disability discrimination claim, Jennings's complaint alleges that WTW "falsely accused her of malingering and then conspired to discharge her" in order to avoid the issue of her requested accommodation. An investigation covering such facts, as alleged, could reasonably be expected to grow out of the assertions in Jennings's EEOC charges, which alleged that WTW denied Jennings her requested accommodation and later terminated her in retaliation for filing a charge reporting this incident to the EEOC. We thus conclude that Jennings properly exhausted her disability discrimination and failure-to-accommodate claims under the ADA.

The district court did not err, however, in concluding that Jennings failed to exhaust her race discrimination and hostile work environment claims. As the basis for her race discrimination claim, Jennings's complaint alleges that "4 African-American Teammates on Baker's team were seated together in a row, facing away from the other (white and Hispanic) Teammates on Baker's team." It is not reasonable to expect that an investigation into Jennings's EEOC charges, which mentioned only her claim that she was not paid for the training days completed before her injury while

No. 19-11028

her white colleagues were treated differently, would uncover facts related to the seating segregation Jennings alleges in her complaint. Nor is it reasonable to expect that an investigation into Jennings's EEOC charges would reveal the harassment Jennings alleges as the basis for her hostile work environment claim. We therefore conclude that while Jennings did exhaust her disability discrimination and failure-to-accommodate claims, she failed to exhaust her claims of race discrimination and a hostile work environment.

IV.

Having determined that Jennings administratively exhausted her claims of disability discrimination and failure to accommodate under the ADA, we now consider whether the district court erred in granting summary judgment to WTW on these claims.

The district court concluded that Jennings's disability discrimination and failure-to-accommodate claims failed on the merits because her injury was not permanent and thus could not be a substantially limiting impairment. Although the district court did not reach the other elements of Jennings's failure-to-accommodate and disability discrimination claims, we may affirm summary judgment on any basis supported by the record. *Thibodeaux v. Sanofi U.S. Servs., Inc. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 995 F.3d 384, 388 (5th Cir. 2021).

Jennings claims that WTW failed to accommodate the disability caused by her leg injuries, in violation of the ADA. To prevail on her failure-to-accommodate claim, Jennings must show that "(1) [she] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (quoting *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452

(5th Cir. 2013)). As our court noted in granting Jennings leave to proceed IFP, the district court did not acknowledge the 2008 amendment to the ADA and subsequent caselaw in reasoning that Jennings's temporary injury could not establish a disability under the ADA. We need not determine whether this was error, however, because even assuming that Jennings satisfied the required disability showing, Jennings failed to raise a genuine issue of material fact as to whether WTW reasonably accommodated her resulting limitations.

In response to Jennings's injury, WTW told her that she could restart her training on June 6, 2016, which she did. "Time off, whether paid or unpaid, can be a reasonable accommodation." *Moss*, 851 F.3d at 418 (quoting *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)). Jennings fails to show that WTW's proposed accommodation, which was akin to unpaid leave and extended beyond Jennings's documented one-week limitations period, was unreasonable. That WTW declined to provide Jennings's requested accommodation—to continue her training on the first floor with a dedicated trainer—does not alter our conclusion. "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004)).

Jennings also asserts a claim of disability discrimination based on WTW's actions culminating in her July 12, 2016 termination. To make a prima facie case of disability discrimination under the ADA, Jennings must establish that "(1) [she] has a disability or was regarded as disabled, (2) [she] was qualified for the job, and (3) [she] was subject to an adverse employment decision on account of [her] disability." *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 & n.4 (5th Cir. 2017) (citing *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016)). Jennings bases her claim of disability discrimination

on her purported actual disability, rather than an allegation that WTW regarded her as disabled. "In an ADA case, the relevant time for assessing the existence of a disability is the time of the adverse employment action." *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009) (citing *Samuels v. Kansas City Mo. Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006); *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001); *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000)).

The adverse employment action relevant to Jennings's claim is her July 12, 2016 termination.[3] The only evidence of Jennings's medical diagnosis in the record indicates that her limitations were expected to last until June 1, 2016. Jennings conceded in her deposition testimony that she did not submit any evidence of diagnosed limitations lasting beyond June 1, 2016. Because Jennings has not pointed to evidence showing that she had a disability at the time of her July 12 termination, she cannot establish a prima facie claim of disability discrimination. *See Caldwell*, 850 F.3d at 241; *Chevron Phillips Chem Co.*, 570 F.3d at 618. Jennings has not raised a genuine issue of material fact as to her failure-to-accommodate and disability discrimination claims, and WTW is entitled to judgment as a matter of law. *See Moss*, 851 F.3d at 417. We thus affirm the district court's grant of summary judgment to WTW on these claims and likewise affirm the district court's denial of summary judgment to Jennings.

---

[3] Jennings argues that WTW's decision to have her restart training on June 6 was also an adverse employment action. To the contrary, under the circumstances, this decision was a reasonable response to her limitations and not an adverse employment action. *See Austgen v. Allied Barton Sec. Servs. L.L.C.*, 815 F. App'x 772, 775 (5th Cir. 2020) (per curiam).

V.

Jennings also appeals the district court's denial of her motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). We review for abuse of discretion. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citing *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994)). "A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Id.* at 478 (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). Granting such a motion is appropriate (1) to correct a manifest error of law or fact, (2) where the movant presents newly discovered evidence that was previously unavailable, or (3) where there has been an intervening change in the controlling law. *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)). Jennings's Rule 59(e) motion presented neither an error that undermined the correctness of the judgment nor newly discovered evidence nor an intervening change in law. We thus conclude that the district court did not abuse its discretion in denying Jennings's motion to alter or amend the judgment.

VI.

Jennings also challenges the district court's decision to tax costs against her. We review a decision to tax costs for abuse of discretion. *Moore v. McDonald*, 30 F.3d 616, 621 (5th Cir. 1994). Even where a litigant is granted IFP status, 28 U.S.C. § 1915(f)(1) provides that "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings." 28 U.S.C. § 1915(f)(1). A frivolous lawsuit is not a necessary condition to taxing costs against an IFP litigant. *See Lay v. Anderson*, 837 F.2d 231, 232 (5th Cir. 1988). Jennings has not shown that the district court abused its discretion in taxing costs against her.

No. 19-11028

## VII.

For the foregoing reasons, we AFFIRM the district court's judgments (1) granting WTW's motion for summary judgment, denying Jennings's motion for summary judgment, and taxing costs against Jennings; and (2) denying Jennings's motion to alter or amend the judgment.