# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 5, 2023

Lyle W. Cayce
Clerk

No. 23-50036

———————

Alberto Martinez,

*Plaintiff—Appellant*,

*versus*

University of Texas at Austin,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1175

———————————————————

Before Stewart, Dennis, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The district court found that Alberto Martinez failed to establish a prima facie case of retaliation and granted summary judgment in favor of University of Texas at Austin (UT). Because Martinez adequately alleged a causal link between his protected activity and UT's adverse actions, we reverse and remand for further proceedings.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50036

## I.

Martinez, who is Hispanic, is a tenured professor in UT's History Department. In spring 2018, he informed the History Department by e-mail that there was "discrimination" and "marginalization" of Hispanic employees within the Department. In response, the department chair, Jacqueline Jones, appointed Martinez to head a newly created "Equity Committee." The committee was tasked with creating "a plan of action to help fix inequities" and "review[ing] equity broadly to include not just Hispanics, but other minorities, gender, and any colleagues who fe[lt] disenfranchised."

As part of his work on the committee, Martinez created a salary report in October 2018 (the October report). Though the report generally dealt with the issue of "pay compression,"[1] it expressly noted that in certain instances minority professors were not compensated the same as other professors. Specifically, the report stated that "no minorities . . . have served in the categories of service compensated by the [History] Department," and that several minority professors were being paid less than their co-workers, even though those minority professors had more scholarly publications. He circulated the report among his colleagues and supervisors. According to Martinez, "some white administrators became angered or very annoyed by [his] report," including Jones.

Martinez alleges Jones thereafter subjected him to several retaliatory acts: (1) on October 19, 2018, Jones told another faculty member that she was going to disband the Equity Committee (though she never did); (2) between November 2018 and January 2019 Jones created new subcommittees for the Equity Committee, unilaterally appointed members to

---

[1] The report defines pay compression as "inequities in salaries."

those subcommittees, and delegated many of Martinez's responsibilities to those subcommittees; (3) in January 2019, Jones filed a report with the Office of Inclusion and Equity against Martinez alleging that he engaged in an inappropriate relationship with a graduate student; (4) in March 2019, Jones told the Title IX liaison about the alleged inappropriate relationship, which caused the liaison to open an investigation; (5) later in March, Jones accused Martinez of making "disparaging" and "denigrating" statements about female co-workers; (6) in April 2019, Jones filed another report against Martinez alleging that he made anti-Semitic remarks; (7) in May 2019, Jones chose not to renew Martinez's research fellowship; (8) in September 2019, Jones removed Martinez from the Equity Committee; and (9) in October 2019, Martinez did not receive a teaching award because of rumors about the inappropriate relationship and anti-Semitic remarks.

Martinez filed an EEOC charge on December 9, 2019. The charge discussed each of the retaliatory actions above except the loss of Martinez's research fellowship and the Title IX investigation. The EEOC issued Martinez a right-to-sue letter on August 27, 2020, and he filed his lawsuit in November 2020. In his second-amended complaint, Martinez alleged a single Title VII retaliation claim.[2]

After discovery, UT moved for summary judgment, which the district court granted. First, the court found that Martinez failed to exhaust his administrative remedies as to Jones's alleged retaliatory actions except for her accusation that Martinez made "disparaging" remarks about female co-workers, her reporting of Martinez's alleged anti-Semitic remarks, and her removal of Martinez from the Equity Committee.

---

[2] Martinez asserted a Title VII discrimination claim in his original complaint, but he did not pursue that claim in his second-amended complaint or on appeal.

No. 23-50036

The court then analyzed Martinez's prima facie case for retaliation based on those three actions. It determined that Martinez's e-mails in spring 2018 constituted a protected act, but that his creation of the October report did not. Next, it concluded that Jones's reporting of Martinez's alleged anti-Semitic remarks and removal of Martinez from the Equity Committee were materially adverse acts, but Jones's accusation that Martinez made "disparaging" remarks about female co-workers was not. Regardless, in the end, the court found that Martinez's claim failed because he established no causal link between the spring 2018 e-mails and Jones's adverse acts. It therefore granted summary judgment without addressing UT's proffered non-retaliatory reasons for Jones's actions or the question of pretext.

## II.

We review a summary judgment *de novo*, applying the same legal standards as the district court. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). "We construe all facts and inferences in the light most favorable to the nonmov[ant] . . . ." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

We first address the exhaustion issue and then discuss Martinez's prima facie case.

4

No. 23-50036

## A.

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC. *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021). We "interpret[] what is properly embraced in a review of a Title[] VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of [retaliation]." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970)). A plaintiff must file his charge "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).[3]

The district court calculated the exhaustion period based on Martinez's EEOC complaint filed on December 9, 2019. Accordingly, it found that it could only consider acts of retaliation that occurred after February 12, 2019. Martinez counters that he filed a complaint with the Texas Workforce Commission Civil Rights Division and the EEOC on September 27, 2019, such that we should consider acts of retaliation that occurred after November 30, 2018. But the September 27 complaint is not in the record,[4] and the district court did not consider it. We therefore do not consider Martinez's argument on appeal. *See* Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence . . . the appellant must include in the record a

---

[3] The three-hundred-day time frame applies because Martinez filed charges of discrimination with both the Austin Equal Employment/Fair Housing Office and the EEOC on December 9, 2019. *See* 42 U.S.C. § 2000e-5(e)(1) (explaining that the time period is three hundred days from when "the person aggrieved has initially instituted proceedings with a State or local agency").

[4] Martinez filed a motion to supplement the record pursuant to Federal Rule of Appellate Procedure 10(e)(2), which this court denied.

transcript of all evidence relevant to that finding or conclusion."). The district court did not err by only considering materially adverse acts that occurred after February 12, 2019.

The district court also determined that Martinez did not exhaust his administrative remedies as to the loss of his fellowship, the loss of the teaching award, and the Title IX investigation. We agree. Martinez did not mention the loss of the teaching fellowship and the loss of the teaching award in his EEOC charge, and an investigation into those acts could not "reasonably be expected to grow" out of what he included in the charge. *Jennings*, 11 F.4th at 342. Martinez similarly did not mention the Title IX investigation in his EEOC charge or his district court complaint. And "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

In sum, the only retaliatory acts we consider as support for Martinez's prima facie case are (1) Jones's accusation that Martinez made "disparaging" and "denigrating" statements about female co-workers; (2) Jones's filing of the report against Martinez alleging that he made anti-Semitic remarks; and (3) Jones's removal of Martinez from the Equity Committee.

## B.

A Title VII retaliation claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden-shifting framework. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2020). Under that framework, the plaintiff "carries the initial burden of establishing a prima facie case of retaliation." *Id.* (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). "If the plaintiff establishes a prima facie

case, then the employer has the burden of production to provide 'a legitimate, non-[retaliatory] reason' for the adverse employment action." *Id.* (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020)). "If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* (quoting *Brown*, 969 F.3d at 577).

As the district court decided the case at *McDonnell Douglas* step one, Martinez's prima facie burden, we likewise focus our attention there. To establish a prima facie retaliation claim, "a plaintiff must show that '(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.'" *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)).

**1.**

The district court found that Martinez engaged in protected activity when he complained of discrimination in the spring 2018 e-mails, but he did not when he published the salary report. We agree with the former finding, but not the latter.

Protected activity under Title VII's anti-retaliation provision "can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'mak[ing] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter.'" *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)). The first is known as the "opposition clause," and the second is known as the "participation clause." *Id.* The district court rightly found that Martinez's creation of the salary report was not a protected activity under the participation clause

because it was an internal investigation. *See id.* at 239 n.2 (noting "every Court of Appeals . . . squarely has held that participation in an internal employer investigation not connected with a formal EEOC proceeding does not qualify as protected activity under the participation clause").

But the district court erred in failing to consider whether that action was a protected activity under the opposition clause. In *Rite Way*, we held that "solicited complaints . . . constitute 'opposition'" under Title VII's anti-retaliation provision. *Id.* at 240 (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276–80 (2009)). Here UT's creation of the Equity Committee was akin to soliciting complaints, as in *Rite Way* and *Crawford*. When Jones, as History Department chair, put Martinez in charge of the committee, she tasked him with creating "a plan of action to help fix inequities" and "review[ing] equity broadly . . . ." Plainly, Martinez developed the October report within that context, as the notes on the report indicate that its purpose was to substantiate inequities in minority faculty compensation. *Cf. Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 224 (5th Cir. 2023) ("[S]tating one's belief that discrimination has occurred virtually always constitutes opposition."). Unless Jones's creation of the Equity Committee was intended to be empty window dressing, a natural outgrowth of empaneling the committee was its identifying perceived discrimination and proposing solutions. *See Crawford*, 555 U.S. at 279. If the committee's activities were not protected, "prudent employees would have a good reason to keep quiet about Title VII offenses against themselves or against others." *Id.* (noting the "primary objective" of Title VII is "avoiding harm to employees").

UT counters that the October report "did not oppose an unlawful employment practice" because it "merely focused on 'pay compression,' an issue that impacted all UT Austin faculty and is not specific to minorities." But UT's argument is undermined by two things. First, the salary report was

created in the context of the Equity Committee, whose express purpose was to "identify inequities" and "review equity broadly to include not just Hispanics, but other minorities, gender, and any colleagues who fe[lt] disenfranchised." Second, the report expressly noted that "no minorities . . . have served in the categories of service compensated by the [History] Department," and that several minority professors were being paid less than their co-workers, even though those minority professors had more scholarly publications. Those statements are enough to constitute opposition under Title VII's anti-retaliation provision. *See Wallace*, 57 F.4th at 224. Thus, a reasonable jury could find that Martinez's creation of the October report was a protected activity.

**2.**

Now, to assess the three alleged retaliatory acts that were properly exhausted. The district court found that Jones's accusation that Martinez made disparaging remarks about female co-workers was not a materially adverse action, but it found the allegations of anti-Semitic remarks and Martinez's removal from the Equity Committee were. We agree.

A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[A]n employment decision tends to be 'materially adverse' when it changes 'job title, grade, hours, salary, or benefits' or effects a 'diminution in prestige or change in standing among . . . co-workers.'" *Id.* (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)). But mere "petty slights" or "minor annoyances" do not rise to the level of a materially adverse action. *See White*, 548 U.S. at 68.

Jones accused Martinez of making disparaging remarks about female co-workers in a private meeting and through e-mail. Accordingly, those accusations could not affect Martinez's "prestige" or "change his standing among co-workers." Contrarily, a reasonable juror could find that Jones's filing the report alleging anti-Semitic remarks and her removing Martinez from the Equity Committee would affect his standing among co-workers and might have dissuaded him from making a charge of discrimination. *Cf. Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006) (finding that a "reasonable jury could find that the prospect of . . . an investigation could dissuade a reasonable employee from making or supporting a charge of discrimination").

### 3.

The district court held that Martinez's claim failed because he did not establish a causal link between his protected activity and Jones's retaliatory acts. Focusing on Martinez's spring 2018 e-mails, the court found that "nearly a year passed" between the e-mails and Jones's first retaliatory act— her report of his alleged anti-Semitic remarks in April 2019. It further found Martinez provided limited evidence regarding Jones's retaliatory motive. We disagree with the district court's conclusion.

We begin by noting that "the standard for satisfying the [prima facie] causation element is much less stringent than a but for causation standard." *Ackel*, 339 F.3d at 385 (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001)). To demonstrate causation at the prima facie stage, "a plaintiff must demonstrate that the employer's decision 'was based in part on knowledge of the employee's protected activity.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). When causation is based on "mere temporal proximity," that proximity must be "very close." *Id.* (quoting

*Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). But when other evidence of a causal link is presented, consideration of the time between the protected activity and the adverse action is only "part of the analysis." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992) (finding that fourteen-month delay between a protected activity and a termination will not necessarily preclude a finding of causation when the plaintiff can adduce other evidence suggesting a causal relationship).

By analyzing only the spring 2018 e-mails as protected activity, the district court found there was "no temporal proximity giving rise to a causal link." However, when the October report is considered as a protected activity, the lapse between the protected activity and the materially adverse action shrinks from "nearly one year" to six months. *Cf. Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (suggesting that five months between a protected activity and an adverse act might establish causation when coupled with other evidence of retaliation).

And, importantly, Martinez has provided other evidence of a causal link between the October report and Jones's retaliatory acts. Immediately after Martinez circulated the October report, Jones made a comment about disbanding the Equity Committee.[5] She then restructured the Equity Committee by creating subcommittees, which Martinez alleges diluted his responsibilities. Eventually, Martinez was removed from the Equity Committee altogether. That progression is enough for a reasonable juror to

---

[5] Though many of these acts, as unexhausted, could not properly establish the "materially adverse" element of Martinez's prima facie case, *see supra* II.A., they may nonetheless serve as evidence suggesting a causal link between Martinez's protected activity and Jones's exhausted retaliatory acts. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) ("This court has repeatedly approved of the introduction of previous conduct to illuminate currently actionable issues in discrimination and harassment cases.").

No. 23-50036

find a causal link between the October report and Jones's retaliatory acts at the prima facie stage, particularly coupled with the fact that the Office of Inclusion and Equity determined that Martinez likely did not make the anti-Semitic remarks Jones alleged. Accordingly, Martinez has met the "less stringent standard" to establish causation, *see Ackel*, 339 F.3d at 385, and he has therefore established a prima facie case of retaliation.

## III.

The district court erred in granting summary judgment for UT. Martinez has established a prima facie case of retaliation. The court did not consider UT's proffered non-retaliatory reasons for the alleged retaliatory actions or reach the question of pretext. We decline to do so in the first instance on appeal. The district court's summary judgment is therefore reversed, and the case is remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.